# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GREGORY ALVIN JAMES VAN ETTEN,  )
)
    Plaintiff,  )
)
v.  )    C.A. No. 4:24-cv-40113-DHH
)
STEPHANIE K. FATTMAN, ASHLEY  )
STEWART, MEGAN BROWN, ANGELINA  )
CONSOLMAGNO, MICHELE CRISTELLO,  )
JENNIFER MELIA, DANIEL M. WRENN,  )
SERGE GEORGES JR., MICHAEL S. DENHAM,  )
WORCESTER PROBATE AND FAMILY  )
COURT and CHILD SUPPORT SERVICES  )
DIVISION,  )
)
    Defendants.  )

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## EMERGENCY MOTION TO STAY INCOME WITHHOLDING ORDER

Defendants (identified below) hereby oppose *pro se* Plaintiff's Emergency Motion, Dkt.

31. This is a purported § 1983 action arising from Plaintiff's 2007 divorce proceeding in the

Worcester Probate and Family Court (the "Probate Court"), the Probate Court's child-support

orders against him, and the Child Support Services Division of the Massachusetts Department of

Revenue's ("CSS-DOR") enforcement of those orders. [1] The Complaint seeks a "permanent

---

[1] The Defendants include CSS-DOR (previously the Child Support Enforcement Division until April 1, 2024), the Probate Court – which are both Commonwealth agencies – and nine individual Commonwealth employees sued in their individual and official capacities. The individual defendants include three members of the state judiciary, Hon. Jennifer Melia, Hon. Daniel M. Wrenn, and Hon. Serge Georges, Jr. (the "Judiciary Defendants"); the Probate Court Register, Stephanie K. Fattman, and three members of her staff, Ashley Stewart, Megan Brown, and Angelina Consolmagno (the "Register Defendants"); and two CSS-DOR officials, Deputy Commissioner Michele Cristello, and agency counsel Michael S. Denham (the "CSS-DOR Individual Defendants"). See Compl. at 1-3. By filing this opposition, Defendants do not waive any defenses to or grounds for dismissal of this action. Defendants reserve their right, and intend, to present their grounds for dismissal to this Court in their motion to dismiss under Fed.

injunction to stop [further] collection efforts," an order from this Court vacating the Probate Court's orders, and money damages stemming from CSS-DOR's enforcement of and collection on those orders. Compl. ¶ 72. In his Emergency Motion, Plaintiff appears to ask this Court to temporarily enjoin an "income withholding order" issued against him by CSS-DOR "and any other collection effort by CSS-DOR" pending further proceedings in this case, id. at 4. The Emergency Motion should be denied for several reasons.[2]

**First**, Plaintiff's motion lacks any coherent basis in law and flouts this Court's October 2 Order, see Dkt. 26, which allowed Defendants until November 15, 2024, to respond to the Complaint and Plaintiff's pending motion for preliminary injunction (the "PI Motion"), see Dkt. 18. The Court did so over Plaintiff's written objection(s), which requested that Defendants' extension be "conditioned" on a "cease and desist order . . . restraining CSS-DOR from garnishing wages or any other collection practice" until the PI Motion is heard. See Dkt. 25 at 1. The Emergency Motion appears to seek that same relief, which is the same relief requested in the PI Motion. As stated in Defendants' Motion for an Extension, see Dkt. 21, undersigned counsel for all eleven Defendants needed a modest extension of time to investigate Plaintiff's claims and ensure that Defendants' positions are properly and comprehensively presented to the Court. He further disclosed that he anticipates filing a motion to dismiss the Complaint in its entirety on various grounds. Id. ¶¶ 6-7. Nothing changed between the time of that filing, on October 1, and Plaintiff's first attempt to file his Emergency Motion, on October 4, see Dkt. 29, except that

---

R. Civ. P. 12(b)(1) and 12(b)(6), which will be filed on or before November 15, 2024, pursuant to this Court's October 2 Order. Dkt. 26.

[2] Defendants assume that Plaintiff's Emergency Motion seeks equitable relief solely from CSS-DOR, given that CSS-DOR is the only defendant mentioned in the Motion and its prayer for relief. See Dkt. 31 at 4. To the extent the Emergency Motion can reasonably be construed as seeking preliminary equitable relief from any other Defendant, all Defendants join in this Opposition.

Plaintiff failed to persuade the Court that the requested extension of 39 days would cause him "irreparable injury."  See Dkt. 25 at 3.

Undersigned counsel just returned from a trip abroad on October 8[3] and still needs more time to prepare a full, substantive response to Plaintiff's allegations.  Plaintiff's Emergency Motion has the effect of unfairly goading premature and incomplete argument on his PI Motion and Defendants' anticipated motion to dismiss.  Indeed, Plaintiff's Emergency Motion repeats verbatim his PI Motion's threadbare recitation of why he appears to believe he has demonstrated a likelihood of success on the merits of his claims, compare Dkt. 18 at 2 ¶ 1(a)-(d), with Dkt. 31 at 3, ¶¶ 6-9, ostensibly inviting the Defendants and Court to address whether that is so.[4]  In other words, it is duplicative of the PI Motion and effectively seeks to illicit a more substantive response from Defendants – on Plaintiff's preferred schedule – in an end-run around this Court's October 2 Order.  This tactic should be discouraged.  The Court should deny Plaintiff's Emergency Motion for this reason alone.

**Second**, to the extent Plaintiff's Emergency Motion is meant to be an application for a temporary restraining order or separate motion for preliminary injunction, under Fed. R. Civ. P. 65, he wholly fails to carry his burden of demonstrating a likelihood of success on the merits of

---

[3] Insofar as Plaintiff appears to assert in the Emergency Motion's Local Rule 7.1 certification that undersigned counsel was ignoring his attempts to confer, that is inaccurate. Undersigned counsel never received a message from Plaintiff indicating his desire to confer on any motion until after this Court's October 8 Order denying his first Emergency Motion with leave to re-file after complying with Rule 7.1. Dkt. 30. The October 4 email to which the Rule 7.1 certification refers simply attached the first Emergency Motion without substantive comment.

[4] The only differences between the two motions is the PI Motion's boilerplate, conclusory statements as to the other three preliminary injunction factors, see Dkt. 18 at 1 ¶¶ 2-4, and the Emergency Motion's puzzling "Judicial Notice" section with some citation, none of which appears to have anything to do with the Complaint's allegations or purported legal claims, see Dkt. 29 at ¶¶ 1-5.

his claims.  See Johnson v. Allen, No. 22-cv-10907, 2022 WL 16823008, at *1 (D. Mass. Nov. 8, 2022) (movant for TRO and/or preliminary injunction bears the burden of establishing (1) his "likelihood of success on the merits; (2) the risk of the movant suffering irreparable harm in the absence of injunctive relief; (3) the balance of equities [in his favor]; and (4) [that] granting the injunction is in the public interest").  It is his burden to do so, notwithstanding his *pro se* status and the "less stringent standards" with which courts tend to treat the filings of such litigants.  Cf. Garcia v. Nationstar Mortg., No. 20-cv-10246, 2020 WL 618698, at *1 (D. Mass. Feb. 10, 2020) (pro se litigant "must establish a likelihood of success on the merits of his claim" to obtain TRO, just as any other movant).  A movant's ability to demonstrate "likelihood of success on the merits is the factor that weighs most heavily in [the Court's] analysis," and if he cannot do so through evidence or "proof beyond unverified allegations in the pleadings" the inquiry must end there.  See Johnson, 2022 WL 16823008, at *1, 5 (internal quotes and cites omitted).

Here, Plaintiff provides no evidence to support his motion whatsoever.  And the only "facts" included in his Emergency Motion are that (1) he never received service of his ex-wife's divorce summons and complaint, see Dkt. 31 ¶ 6; Compl. ¶¶ 22-24, which was allowed by publication per a Probate Court order on July 16, 2007, see Compl. ¶¶ 21-22; Ex. 1 at 3, Docket, Van Etten v. Van Etten, Worcester Probate and Family Court, No. WO07D1562DV1; and (ii) the "Income Withholding Order and bank levies [issued by CSS-DOR] are not signed by a Neutral and Detached Magistrate and do not contain a court seal," see Dkt. 31 ¶ 9.  He fails to cite to any law, or develop any argument, showing how these facts support a reasonable likelihood of success on the merits of his §§ 1983 and 1985 claims against CSS-DOR or any other Defendants.[5]  For these reasons too, Plaintiff's Emergency Motion should be denied.  Cf. Adams

---

[5] Although the Emergency Motion purports to cite broad propositions of law about the

v. Wells Fargo Bank, N.A., 221 F. Supp. 3d 171, 178 (D. Mass. 2016) (holding that where "Plaintiffs have failed to establish a likelihood of success on the merits as to those claims which could arguably undermine the validity of the foreclosure proceeding," i.e., the target of preliminary injunction, such a failure "essentially ends the [Court's] inquiry").

**Third**, this Court lacks subject-matter jurisdiction to enjoin Defendant CSS-DOR from enforcing the Probate Court's child-support order, which is referenced in the Complaint at ¶¶ 24, 35, 40, 45-49, 55, 71, 72, and the underlying target of the Emergency Motion. As this Court can see from even a cursory review of the Complaint, the thrust of Plaintiff's core claims is that all child-support orders issued against him by the Probate Court during his divorce proceedings were "unlawful." Specifically, he appears to allege that the Probate Court never lawfully obtained jurisdiction over him and/or otherwise violated his federal rights, so (the argument goes) the child-support orders it issued against him were "fraudulent" and, therefore, the income withholding order issued by CSS-DOR to collect payments under those orders is also unlawful. Compl. ¶¶ 24, 34, 40. As will be more fully explained in Defendants' forthcoming motion to dismiss, the Probate Court's most recent child-support order, which CSS-DOR is charged with

---

Fourth and Seventh Amendments, see Dkt. No. 31, ¶¶ 7-8, nowhere in the Emergency Motion or the Complaint does Plaintiff allege sufficient facts that would give rise to a plausible §§ 1983 or 1985 claim based on a Fourth or Seventh Amendment violation. "The Fourth Amendment indicates with some precision the places and things encompassed by its protections: persons, houses, papers, and effects," Florida v. Jardines, 569 U.S. 1, 6 (2013), and child-support collection does not implicate any one of them, see Hart v. Shmayenik, No. 23-cv-4779, 2023 WL 7164975, at *4 (S.D.N.Y. Oct. 30, 2023) (rejecting Fourth Amendment § 1983 claim based on child-support collection); Cline v. Burke, 682 F. Supp. 3d 125, 133 (D. Mass. 2023) (same). The "Seventh Amendment right to a jury trial 'governs proceedings in federal court, but not in state court.'" Francisco of Family Santos v. Essex County, No. 19-cv-10387, 2019 WL 3557703, at *3 (D. Mass. Aug. 5, 2019) (quoting Gasperini v. Ctr. Of Humanities, Inc., 518 U.S. 415, 418 (1996)); see also Stonehill Coll. v. Mass. Comm'n Against Discrimination, 441 Mass. 549, 566 n.20 (2004) (stating that "[i]ndisputably, no constitutional right to a jury trial attaches in the Probate and Family Court").

enforcing, see infra at 8-9, was issued in June 2009 as part of a Judgment of Modification pursuant to the divorce parties' stipulation ("2009 Judgment" or "child support order").  See Ex. 1 at 5 (June 25, 2009 entry); Ex. 2, Judgment of Modification, Van Etten v. Van Etten, No. WO07D1562DV1 (dated June 16, 2009).[6]  As provided in that 2009 Judgment, Plaintiff was ordered to pay weekly amounts in child support "to go through the Department of Revenue."  Ex. 2 at 2 ¶ 1.  Over the years that followed, the Probate Court dismissed Plaintiff's subsequent attempts to have the 2009 Judgment modified, see Ex. 1 at 5-6 (July 1, 2010, and Aug. 6, 2014, entries), and denied his motions to vacate the 2009 Judgment, id. at 6 (Aug. 15, 2024, entry).

　　　Plaintiff's principal claims attacking the validity of the Probate Court's child support order and CSS-DOR's efforts to enforce it – which appears to be the sole basis for the relief requested in Plaintiff's Emergency Motion – is very likely subject to dismissal under the Rooker-Feldman doctrine.  "The Rooker-Feldman doctrine . . . precludes a lower federal court from entertaining a proceeding to reverse or modify a state judgment or decree to which the assailant was a party."  Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) (citing Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983)).  It applies "where the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."  Tyler v. Supreme Jud. Ct. of Mass., 914 F.3d 47, 50 (1st Cir. 2019) (internal quotes and cites omitted).  Even "[w]here a party did not actually present its federal claims in state court," or does not directly challenge a state-court judgment, "Rooker-Feldman forecloses lower federal court jurisdiction over claims that are "inextricably intertwined with the

---

[6] This came after the Probate Court issued a Judgment of Divorce on January 22, 2008, and Plaintiff later sought modification of that judgment.  See Ex. 1 at 4-5.

claims adjudicated in a state court," i.e., "if the federal claim succeeds only to the extent that the

state court wrongly decided the issues before it."  Rosenfeld v. Egy, 346 F.3d 11, 18-19 (1st Cir.

2003) (internal quotes and cites omitted); see Mandel, 326F.3d at 271.

Here, the Complaint seeks relief in the form of (i) "a permanent injunction to stop any

[child support] collection efforts," (ii) an order vacating "[a]ll support orders" in Plaintiff's

divorce action, and (iii) three categories of monetary relief stemming from the Probate Court's

support order and the child-support payments collected to date.  Id. ¶ 72.  Each one of these

requests for relief – and the underlying claims purporting to support them – can only succeed if

this Court were to determine that the Probate Court's orders allowing service by publication and

imposing child-support were wrongly decided.  This flagrant "attempt to undo the state-court

rulings . . . is precisely the sort of 'end-run around [] final state-court judgment[s]' that the

Rooker-Feldman doctrine proscribes."  See Efreom v. McKee, 46 F.4th 9, 17-18 (quoting

Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 66 (1st Cir. 2018)).  Indeed, Plaintiff's

unlikelihood of success on his claims is further demonstrated by the long line of recent cases in

this district, involving similar claims arising from child-support orders and enforcement actions,

where courts have uniformly held that they lack jurisdiction to "issue any orders interfering with

child support determinations" under either the Rooker-Feldman doctrine and/or Younger

abstention principles.[7]  See, e.g., Masomi v. Madadi, No. 18-cv-10058, 2018 WL 1122362, at *2

---

[7] "The Younger abstention doctrine arises from Younger v. Harris, 401 U.S. 37- (1971)
and bars the exercise of federal jurisdiction if it 'would interfere (1) with an ongoing state
judicial proceeding; (2) that implicates an important state interest; and (3) that provides an
adequate opportunity for the federal plaintiff to advance his federal constitutional challenge.'"
Gray-Bey, 2021 8323638, at *4 (quoting Rossi v. Gemma, 489 F.3d 26, 34-35 (1st Cir. 2007).
Courts in this district have consistently determined that all three prongs of Younger are satisfied
in cases such as this, challenging child support orders or child-support enforcement, to the extent
the proceedings are ongoing.  Id.; see, e.g., Watson v. Ordonez, 318 F. Supp. 3d 456, 460 (D.
Mass. 2018) (dismissing, under Younger, claims against Department of Revenue and Probate

(D. Mass. Mar. 1, 2018) (dismissing claims – under the <u>Rooker-Feldman</u> doctrine – seeking to have federal court "alter or overturn decisions of the Massachusetts courts relating to [plaintiff's] divorce"); <u>see also</u> <u>Gray-Bey v. 42 U.S.C. Code 645(3) Mass. Dep't of Revenue Child Support Enf;t Div.</u>, No. 20-cv-12042, 2021 WL 8323638, at *4 (D. Mass. Mar. 17, 2021) (holding that "challenges . . . [to] [c]hild support matters and issues surrounding the enforcement of child support . . . would be precluded under one or both of" the <u>Rooker-Feldman</u> and <u>Younger</u> abstention doctrines); <u>Pierre v. Cristello</u>, No. 17-cv-30105, 2017 WL 4768006, at *2 (D. Mass. Oct. 3, 2017) (same, dismissing claims against several state-court judges and officials from CSS-DOR under <u>Rooker-Feldman</u> and/or <u>Younger</u>, <i>inter alia</i>).

     Although Plaintiff may argue that the "income withholding order" to which he refers is an invalid "administrative order" issued without due process, <u>see</u> Compl. ¶ 35, rather than an order of the Probate Court, <u>see</u> Dkt. 31 ¶ 9, this precise legal theory has been rejected as untenable. <u>See</u> <u>Francisco of Family Santos v. Essex County</u>, No. 19-cv-10387, 2019 WL 3557703, at *3 (D. Mass. Aug. 5, 2019) (dismissing child-support obligor's § 1983 claims against probate court and CSS-DOR premised on the contention that plaintiff's "income is being unlawfully seized [in violation of his Fourth and/or Fourteenth Amendment rights] pursuant to 'an administrative income withholding order,' the issuer of which 'is not a judge, but is a state run child support collection/enforcement agency'"); <u>Hart v. Shmayenik</u>, No. 23-cv-4779, 2023 WL 7164975, at *3-4 (S.D.N.Y. Oct. 30, 2023) (dismissing similar claims about the "invalidity" of a state-administrative "income withholding order" and seeking to enjoin its enforcement,

---

Court defendants arising from enforcement of child support payments, noting that "enforcement of child support [] touches on a core concern of state government" which the Commonwealth "has a clear interest in"). Here, <u>Younger</u> abstention would apply to divest this Court of jurisdiction over Plaintiff's claims to the extent the Probate Court proceedings have not "ended."

under the <u>Rooker-Feldman</u> doctrine, because injuries caused by an income withholding order are not "separate from the validity of the underlying [court-issued, child-support] order").

As the court in <u>Francisco</u> explained, "Massachusetts law 'provides for child support enforcement services in accordance with the provisions of Title IV, Part D of the Social Security Act, 42 U.S.C. §§ 651-669b (2006) (Title IV-D)," and CSS-DOR has been "designated . . . as the Commonwealth's 'IV-D agency' to administer 'IV-D services.'" <u>Id.</u> at *1 n.1 (first quoting <u>Morales v. Morales</u>, 464 Mass. 507, 510 n.5 (2013), then quoting M.G.L. Ch. 119A, § 1A); <u>see also</u> M.G.L. Ch. 119A, § 1 (calling for DOR to establish "a division of child support enforcement" to implement the provisions of Chapter 119A. Both the federal and Massachusetts statutory schemes provide mechanisms for the withholding of income from a noncustodial parent against whom a support order has been issued "as is necessary to with the order . . . [and] to satisfy [any] arrearages." <u>See</u> 42 U.S.C. § 666(b)(1); M.G.L. Ch. 119A, § 12(b)(6). This requires the IV-D agency (CSS-DOR) to provide notice of the support order to the subject's employer requiring them "to withhold from [the subject's] income the amount specified by such notice . . . and pay such amount . . . to the State disbursement unit . . . for distribution." 42 U.S.C. § 666(b)(6)(A)(i); <u>see also</u> M.G.L. Ch. 119A, § 12. Title IV-D further provides that "[t]he notice given to the employer shall be in a standard format prescribed by the Secretary [of the U.S. Department of Health and Human Services ("HHS")]," <u>see</u> 42 U.S.C. § 666(b)(6)(A)(ii), which Massachusetts has adopted, <u>see</u> M.G.L. Ch. 119A, § 4(c). That standard format is a document entitled "Income Withholding Order," or "IWO," and a sample is available on the HHS website: https://www.acf.hhs.gov/css/form/income-withholding-support-iwo-form-instructions-sample.

Here, this IWO is the "Income Withholding Order" to which Plaintiff refers in his

Complaint and Emergency Motion.[8]  CSS-DOR is required to issue such an IWO to the

employers of child-support-order subjects with outstanding payments or arrearages, under

federal and state law.  Much like the plaintiff in <u>Francisco</u>, Plaintiff does not appear to challenge

the actual procedural due process that he was afforded under state law, but rather the

constitutional validity of the IWO itself because it was issued by CSS-DOR.  But this latter

theory was soundly rejected by the courts in <u>Francisco</u> and <u>Shmayenik</u>, and Plaintiff has not and

could not state a plausible claim for relief under the former.  Chapter 119A clearly provides for

adequate "notice and opportunity to be heard with respect to [CSS-DOR's] administrative

enforcement orders" for purposes of satisfying Fourteenth Amendment due process.  <u>See, e.g.</u>,

<u>Francisco</u>, 2019 WL 3557703, at *3 (holding so, and discussing the notice requirements to child-

support-order subjects, and their right to administrative hearing and judicial review of the final

agency action provided in M.G.L. Ch. 119A).  For this reason too, Plaintiff is unlikely to succeed

on the merits of his claims directed at enjoining enforcement of CSS-DOR's IWO.

        **Finally**, to the extent the Emergency Motion seeks equitable relief from Defendant CSS-

DOR, Plaintiff is unlikely to succeed on the merits on the alternative grounds that his claims

under §§ 1983 and 1985 against CSS-DOR are barred by the Eleventh Amendment.

---

        [8] As discussed above, Defendants' anticipate their principal grounds for dismissal will be lack of subject-matter jurisdiction under the <u>Rooker-Feldman</u> doctrine and/or <u>Younger</u> abstention.  This, among other immunities from suit available to all Defendants (e.g., sovereign immunity, judicial immunity, quasi-judicial immunity).  If the Court were disinclined to dismiss the suit in its entirety once briefing is complete, CSS-DOR is in possession of well-documented evidence relevant to Plaintiff's claims against it and the CSS Individual Defendants that could perhaps be helpful to the Court in assessing Plaintiff's PI Motion (e.g., Plaintiff's Income Withholding Order, and other correspondence to and from CSS-DOR).  Given the personal identifying information appearing in and privacy concerns regarding some of the contents of those documents (e.g., financial information, SSNs), Defendants are disinclined to attach these materials to the public record at this time.  But if the Court believes it is necessary to review the Income Withholding Order or any other materials, Defendant CSS-DOR is happy to provide it under seal.

It is well-settled that the Eleventh Amendment to the U.S. Constitution "bars federal suits by citizens against the state or state agencies . . . regardless of the relief sought," absent abrogation by Congress or waiver.  Brait Builders Corp. v. Mass., Div. of Capital Asset Mgmt., 644 F.3d 5, 11 (1st Cir. 2011).  "Congress has not abrogated, and Massachusetts has not waived, its Eleventh Amendment immunity for civil-rights claims brought under 42 U.S.C. § 1983 or § 1985."  Cline v. Burke, 682 F. Supp. 3d 125, 131 (D. Mass. 2023) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989) (further explaining that neither the states, their agencies, or their employees are "'persons' subject to suit under § 1983 for damages").  As previously discussed, CSS-DOR is a state agency, see M.G.L. Ch. 119A, § 1, and Plaintiff's claims against it are therefore barred by sovereign immunity.

WHEREFORE, Defendants request that this Court DENY Plaintiff's Emergency Motion.

Respectfully submitted,

Defendants,

STEPHANIE K. FATTMAN, ASHLEY STEWART, MEGAN BROWN, ANGELINA CONSOLMAGNO, MICHELE CRISTELLO, JENNIFER MELIA, DANIEL M. WRENN, SERGE GEORGES JR., MICHAEL S. DENHAM, WORCESTER PROBATE AND FAMILY COURT, and CHILD SUPPORT SERVICES DIVISION.

By their attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

_/s/ John Potapchuk_
John L. Potapchuk, BBO# 699027
Assistants Attorney General
Government Bureau/Trial Division
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 963-2441 | john.potapchuk@mass.gov

Date: October 21, 2024

## CERTIFICATE OF SERVICE

I, John L. Potapchuk, Assistant Attorney General, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants in the Notice of Electronic Filing (NEF), and a copy was also sent to Plaintiff Gregory Alvin James Van Etten via email to his email address on record, jim.vanetten@gmail.com, on October 21, 2024.

_/s/ John Potapchuk_
John L. Potapchuk