# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGORY ALVIN JAMES VAN ETTEN, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No. 4:24-cv-40113-MRG |
| | ) |
| STEPHANIE K. FATTMAN, ASHLEY STEWART, MEGAN BROWN, ANGELINA CONSOLMAGNO, MICHELE CRISTELLO, JENNIFER MELIA, DANIEL M. WRENN, SERGE GEORGES JR., MICHAEL S. DENHAM, WORCESTER PROBATE AND FAMILY COURT and CHILD SUPPORT SERVICES DIVISION, | )<br>)<br>) Leave to file excess pages granted on<br>) November 13, 2024<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

STEPHANIE K. FATTMAN, ASHLEY
STEWART, MEGAN BROWN, ANGELINA
CONSOLMAGNO, MICHELE CRISTELLO,
JENNIFER MELIA, DANIEL M. WRENN,
SERGE GEORGES JR., MICHAEL S. DENHAM,
WORCESTER PROBATE AND FAMILY
COURT, and CHILD SUPPORT SERVICES
DIVISION.

By their attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ John Potapchuk*
John L. Potapchuk, BBO# 699027
Assistants Attorney General
Government Bureau/Trial Division
One Ashburton Place, 18th Floor
Boston, MA 02108
Date: November 14, 2024      (617) 963-2441 | john.potapchuk@mass.gov

**INTRODUCTION**

This suit epitomizes what the <u>Rooker-Feldman</u> doctrine prohibits: an attempted end-run around final state-court orders in federal court. *Pro se* Plaintiff, Gregory Alvin James Van Etten, asserts several federal civil-rights claims arising out of his 2007 divorce action in the Worcester Probate and Family Court (the "Probate Court"), the child-support orders issued against him in that proceeding, and the Child Support Services Division of the Massachusetts Department of Revenue's ("CSS-DOR") efforts to enforce those orders. He also asserts claims arising from his more recent attempts to have the child-support orders vacated, through both motions in the Probate Court action and collateral litigation in other state courts. He seeks both damages and injunctive relief against eleven defendants, including the Probate Court, CSS-DOR, three members of the state judiciary (the "Judiciary Defendants"), the Probate Court Register and three members of her staff (the "Register Defendants"), and two CSS-DOR officials (the "CSS-DOR Individual Defendants").[1] The Complaint seeks to vacate the Probate Court's child-support orders, enjoin CSS-DOR from further child-support collection, and millions of dollars in damages "caused by" the child-support orders.

Read generously, the Complaint appears to broadly allege that the Defendants violated Van Etten's federal civil rights through (i) the Judiciary Defendants' adverse rulings in the Probate Court action and/or collateral challenges to his child-support orders; (ii) the Register Defendants' purported failure to docket certain submissions in connection with his divorce proceedings; and (iii) CSS-DOR's or the CSS-DOR Individual Defendants' conduct in issuing an "income withholding

---

[1] The Judiciary Defendants include Hon. Jennifer Melia, Associate Justice of Massachusetts Probate and Family Court; Hon. Daniel M. Wrenn, Associate Justice of the Massachusetts Superior Court; and Hon. Serge Georges, Jr., Associate Justice of the Supreme Judicial Court. The Register Defendants include Stephanie K. Fattman (Register of Probate for Worcester County) and Register staff members Ashley Stewart, Megan Brown, and Angelina Consolmagno. The CSS-DOR Individual Defendants include Michele Cristello (Deputy Commissioner, CSS) and Michael S. Denham (Counsel, CSS). All are sued in both their individual and official capacities. <u>See</u> Compl. (Dkt. 1) at 1-3.

1

order" against Van Etten and failing to respond to certain documents he sent to them.

The Complaint must be dismissed for several reasons. First, all of Van Etten's claims against all Defendants—whether in their individual or official capacities, and irrespective of the type of relief sought—are barred by the <u>Rooker-Feldman</u> doctrine and/or the <u>Younger</u> abstention principles. Therefore, the Complaint must be dismissed in its entirety for lack of subject-matter jurisdiction, per Fed. R. Civ. P. 12(b)(1). Second, Van Etten's claims against the Probate Court and CSS-DOR are also barred by the Eleventh Amendment, as are his claims for damages or retrospective injunctive relief against all nine individual Defendants in their official capacities. Finally, even if this court had jurisdiction, Van Etten's claims against the Judiciary and Register Defendants in their individual capacities are barred by absolute judicial or quasi-judicial immunity, and his claims against the CSS-DOR Individual Defendants otherwise fail to state a claim for relief. Thus, all of these individual-capacity claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6) on alternative grounds.[2]

## BACKGROUND[3]

### A. Plaintiff's Divorce Proceedings

On July 3, 2007, Van Etten's ex-wife, Shelley, filed a complaint for divorce in the Probate Court, and also sought a restraining order against him and an order of temporary custody over their minor children. <u>See</u> Compl. ¶¶ 12-13, 34; <u>see also</u> Ex. 1, Docket at 2, <u>Van Etten v.</u>

---

[2] Defendants do not waive, and hereby preserve, any other affirmative defenses they may have to Plaintiff's claims, including but not limited to statute of limitations, failure to exhaust administrative remedies, and res judicata.

[3] The facts are drawn from the allegations of the Complaint and treated as true for purposes of this motion only and to the extent they are non-conclusory and non-speculative. The facts are also drawn from the docket entries, orders, and other court records referenced in, or related to, the Complaint's allegations and Plaintiff's various state-court litigations – <u>see</u> Exhibits 1-16 attached hereto –as "[a] court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss," including "documents from prior state court adjudications." <u>See</u> <u>Giragosian v. Ryan</u>, 547 F.3d 59, 66 (1st Cir. 2008); <u>see also</u> <u>Kowalski v. Gagne</u>, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of [relevant] proceedings in other courts.").

Van Etten, Worcester Probate Ct., No. WO07D1562DV1.  That same day, the Probate Court allowed Shelley's *ex parte* motion for temporary orders, which granted custody of the parties' children to Shelley, ordered Van Etten to have no contact with them, and ordered him to pay child support "to [Shelley] through [CSS-DOR]."[4]  Ex. 2 ¶ 3.  The Complaint alleges that this "restraining order" was granted "under false allegations without any evidence or witnesses," see Compl. ¶¶ 12-13, and that the temporary orders "put [Van Etten] in duress," forced him "to leave his home" and eventually declare bankruptcy.  Id. ¶¶ 18-20.

On July 18, 2007, the Probate Court allowed Shelley's motion for service of the divorce summons by publication, see Ex. 3, and ordered service of the summons to be published in the "Barre Gazette," see Ex. 4, which the Complaint alleges is published in a city in which Van Etten never lived or visited, see Compl. ¶ 22.  The Complaint further alleges that the Probate Court allowed service by publication despite no "affidavit of diligent search" or "affidavit showing proof of service" having been filed, allegedly in violation of Rule 4 of the Massachusetts Rules of Domestic Relations Procedure.  Compl. ¶¶ 21, 43-44.  It further alleges that Van Etten was "unable to view the full docket online or file electronically in [the Probate Court]" at the time, and he made "multiple attempts . . . to get copies of process documents," but they "were all denied."  Compl. ¶¶ 23, 28, 34, 41.

Over the next several months, the divorce was fully litigated, with Van Etten's involvement, see Ex. 1 at 3-4 (entries from Aug. 21, 2007, through Jan. 22, 2008).  On January 22, 2008, the Probate Court entered a Judgment of Divorce Nisi,[5] see Ex. 1 at 4; Ex. 5 ("2008

---

[4] As of April 1, 2024, DOR's Child Support Enforcement Division ("CSE-DOR") was renamed the Child Support Services Division.  So, this order refers to Defendant CSS-DOR.

[5] A judgment of divorce nisi becomes absolute 90 days after entry unless otherwise ordered.  M.G.L. c. 208, § 21.  Here, the Judgment of Divorce Nisi became absolute on April 22, 2008.  Ex. 5 at 1.

Judgment of Divorce"), which incorporated a separation agreement requiring Van Etten to pay his ex-wife "$585 per week in child support effective [January 22, 2008]" and providing that "[a]ll support payments, including payments on arrearage shall be paid through [CSS-DOR]." See Ex. 5 at 9 (art. V, § I).

On January 21 and March 26, 2009, Van Etten filed complaints for modification of the 2008 Judgment of Divorce, see Ex. 1 at 4-5, seeking a reduction of the child-support order based on change of salary and increased expenses. See Ex. 6. On June 25, 2009, the Probate Court entered a Judgment of Modification, see Ex. 1 at 5; Ex. 7 ("2009 Judgment of Modification"), which modified the 2008 Judgment of Divorce by reducing Van Etten's child support payments to $337 per week "to go through the Department of Revenue," per the terms of an incorporated stipulation. Ex. 7 at 2, ¶ 1. In 2010 and 2014, Plaintiff filed two additional actions for modification of his child-support order, see Ex. 1 at 5 (entries on Jan. 14, 2010, and July 3, 2014). The 2010 complaint was dismissed, after hearing, based on the Probate Court's determination that there was "no significant change of circumstances on [Van Etten's] income or ability to pay child support." Ex. 8. The 2014 complaint was dismissed per the parties' stipulation, which provided that "all prior court orders shall remain in full force and effect," Ex. 9. Neither judgment was appealed. Ex. 1 at 5-6.

Van Etten alleges that in January 2024, "a large part" of the Probate Court docket became viewable to him for the first time, including the initial service of process documents. Compl. ¶ 34; see id. ¶¶ 23, 28. He then came to believe that the Probate Court "never gained [jurisdiction over him] lawfully" after "realiz[ing] process was not completed according [to] the courts (sic) own rules." Id. ¶ 34. In July 2024, Van Etten attempted to file a motion to vacate the Probate Court's judgments by sending a letter and other documents to the Probate Court's

4

Register's Office, but he alleges they were "ignored and [the] filing did not appear" on the docket. Compl. ¶ 36. He further alleges that Defendant Ashley Stewart, of the Register's Office, sent his motion to vacate back to him "for being improper," without further explanation, and that she later "refused" and returned the attempted filings after Plaintiff had re-sent them. Id. ¶ 37. On August 5, 2024, Plaintiff filed a motion to vacate the 2009 Judgment of Modification in the Probate Court on the grounds that personal jurisdiction was lacking, see Ex. 1 at 6; Ex, 10, after the Probate Court "forced [him] to . . . use[] there (sic) own forms," Compl. ¶ 38. On August 15, 2024, Defendant Judge Jennifer Melia denied Van Etten's motion to vacate, see Ex. 10, which he now alleges was done "[w]ithout response . . . and without authority," Compl. ¶ 39.

### B. Plaintiff's Other Lawsuits & Petitions

Van Etten has filed at least three other actions in state court purporting to challenge the circumstances of his divorce proceedings and/or child-support obligations. First, in April 2023, he filed a civil action against CSS-DOR in Worcester Superior Court, which was dismissed in November 2023. See Ex. 11, Docket, Van Etten v. CSE-DOR, Worcester Super. Ct., No. 2385CV00390; Ex. 12, Order of Dismissal, Dkt. No. 16, Van Etten v. CSE-DOR (Mass. Super. Nov. 6, 2023) (summarizing claims arising from CSS-DOR's efforts to enforce and collect on child-support under the 2009 Judgement of Modification); see also Compl. ¶¶ 24-25 (citing docket number).[6]

---

[6] As relevant to the claims against the Register Defendants, the Complaint appears to allege that certain documents Plaintiff sent for filing in the Probate Court (e.g., "Notice of No Contract," interrogatories) were not filed in the Probate Court, but rather recorded in the Superior Court action, see Compl. ¶¶ 24-25, 27. As relevant to his claims against the CSS-DOR Defendants, Plaintiff alleges that either (i) CSS-DOR, (ii) its Deputy Commissioner, Defendant Michele Cristello, and/or (iii) its litigation counsel, Defendant Michael Denham, "ignored" or failed to respond to certain documents or notices Plaintiff sent them in 2023 and 2024 regarding his child support order. See Compl. ¶¶ 26, 31, 35. For example, the Complaint cites to interrogatories propounded in connection with the Superior Court action, id. ¶ 25, and various "notices," – i.e., a "Mistake of Facts," "notice to terminate withholding order," and "demand for

Second, in November 2023, Van Etten filed a writ of habeas corpus with the single-justice session of the Supreme Judicial Court, under G.L. c. 248, § 1, seeking relief from the 2009 Judgment of Modification, which was transferred to Worcester Superior Court in January 2024, per G.L. c. 211, § 4A. Ex. 13, Docket & Order of Transfer, SJ-2023-0477 (Mass. Jan. 3, 2024); Compl. ¶ 32. Defendant Judge Daniel Wrenn dismissed the petition in February 2024, on the grounds that Van Etten refused to provide financial information, an affidavit of indigency, and the requisite filing fee. See Compl. ¶ 32; Ex. 14, Docket at 3, In Matter of Van Etten, Worcester Super. Ct., No. 2485CV00026; Ex. 15, Order, Dkt. No. 8, In Matter of Van Etten (Mass. Super. Feb. 26, 2024).

Third, in April 2024, Van Etten filed a second state-habeas petition with the SJC's single-justice session seeking relief from the 2009 Judgment of Modification, which was considered and denied by Defendant Justice Serge Georges, Jr. Compl. ¶ 33; see Ex. 16, Docket & Judgment, SJ-2024-0115 (Mass. Apr. 10, 2024). Van Etten filed the instant lawsuit, in September 2024, after his federal habeas petition was dismissed.[7]

### C. Plaintiff's Instant Claims

The Complaint purports to assert 10 counts against various combinations of Defendants, citing mostly to criminal statutes and broadly alleging violations of Van Etten's Sixth, Seventh, and Fourteenth Amendment rights arising from the Defendants' respective roles or participation in his divorce action and/or other litigations discussed above.

As to the ***Probate Court***, Van Etten appears to allege that it violated his federal civil

---

proof of debt" – purporting to assert that Plaintiff's income withholding order was invalid or unlawful, id. ¶¶ 26, 35.

[7] Two weeks after that SJC judgment, Van Etten filed a federal habeas petition in this Court, under 28 U.S.C. § 2254, seeking to vacate the child support order issued by the Probate Court. See Order at 1, Van Etten v. CSE-DOR, No. 4:24-cv-40066-DHH, Dkt. No. 8 (D. Mass. May 24, 2024), R&R adopted by No. 4:24-cv-40066-MRG, Dkt. No 16 (D. Mass. Aug. 20, 2024). That petition was dismissed for lack of jurisdiction, see id.

rights by (i) allowing service of his ex-wife's divorce summons by publication in 2007, Compl. ¶ 43; (ii) issuing child support orders without a trial by jury, id. ¶ 49; and (iii) "[f]orcing the Plaintiff to work in corporate environment to satisfy payments," id. ¶ 53.

As to the ***Judiciary Defendants***, Van Etten alleges that his due process or other federal rights were violated by (i) Judge Melia denying his motion to vacate the 2009 Judgment of Modification, id. ¶ 44; (ii) Judge Wrenn dismissing his first state habeas petition and thereby "deny[ing him] free access to the court," id. ¶ 63; and (iii) Justice Georges denying his second state habeas petition, thereby inflicting the same denial of free access, id. ¶ 64.

As to the ***Register Defendants***, Van Etten alleges that each of Defendants Fattman, Stewart, Brown, and Consolmagno violated his federal rights "for concealment of [the Probate Court] docket and refusal to record filings received via US Post." Compl. ¶¶ 66-69.

As to ***CSS-DOR and the CSS-DOR Individual Defendants***, Van Etten appears to allege that CSS-DOR violated his rights by (i) "fraudulently issuing Income Withholding Orders and Bank garnishments multiple times without due process of law," Compl. ¶ 48; (ii) "forcing [him] to work in the corporate environment to satisfy payments," id. ¶ 53; (iii) refusing to answer his interrogatories propounded in connection with the 2023 Superior Court action, id. ¶¶ 58, 25; and (iv) ignoring other mailings regarding Van Etten's income withholding order, id. ¶¶ 61, 24, 26; see also supra footnote 6. Similarly, Van Etten alleges that Defendant Cristello violated his federal civil rights by "signing income withholding orders multiple times," id. ¶¶ 45, 47, 55, 71, and that Defendant Denham did so by "refus[ing] to answer [his] interrogatories" and "ignoring" other mailings, id. ¶¶ 57, 60; see supra note 6.

The Complaint also contains a vague claim, under 18 U.S.C. § 1985, that "[a]ll Defendants conspired to block, interfere with, and intimidate [Van Etten] into submitting to

unlawful orders." Compl. ¶ 51. As to relief, the Complaint seeks (i) "a permanent injunction to stop any collection efforts," (ii) an order vacating "[a]ll support orders" in Plaintiff's divorce action, and (iii) three categories of monetary relief "caused by" or "due to" the Probate Court's support order and the child-support payments collected to date. Id. ¶ 72.

## ARGUMENT

### I. THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(1), AS BARRED BY THE *ROOKER-FELDMAN* DOCTRINE AND/OR *YOUNGER* ABSTENTION

Because the Complaint seeks to undo or frustrate final judgments of the Probate Court and other state courts—which it does exclusively, see Compl. ¶ 72 (prayer for relief)—this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine and/or Younger abstention. Thus, the Complaint must be dismissed in its entirety, per Fed. R. Civ. P. 12(b)(1).

#### A. The *Rooker-Feldman* Doctrine Divests This Court Of Jurisdiction Over This Suit, To The Extent The Underlying State Court Proceedings Have Ended.

"The Rooker-Feldman doctrine . . . precludes a lower federal court from entertaining a proceeding to reverse or modify a state judgment or decree to which the assailant was a party." Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983)). It applies "where the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Tyler v. Supr. Jud. Ct. of Mass., 914 F.3d 47, 50 (1st Cir. 2019) (quotes and cites omitted). Application of the doctrine "does not depend on what issues were actually litigated in the state court," Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009) (quotes and cites omitted), whether "the federal action formally seek[s] to invalidate the state judgment," Mandel, 326 F.3d at 271, whether the federal action seeks declaratory, injunctive, or monetary relief, see Silva v. Mass., 351 F. App'x 450, 456-57 (1st Cir. 2009), or whether the federal action

8

"introduce[es] a new legal theory . . . that was not broached in the state courts," see Efreom v. McKee, 46 F.4th 9, 19 (1st Cir. 2022). Rather, "it is enough if the federal action would in substance defeat or negate a state judgment, for example if the 'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it'" or if the requested relief would "frustrate [a state-court] order." Mandel, 326 F.3d at 271-72 (cites omitted). In other words, "[w]here federal relief can only be predicated upon a conviction that the state court was wrong," lower federal courts lack subject-matter jurisdiction over the suit. See Tyler, 914 F.3d at 50 (explaining that hearing such a suit would amount to a "prohibited appeal of a state-court judgement," as only the U.S. Supreme Court has statutory jurisdiction to review final state-court decisions involving federal claims).

Here, the Rooker-Feldman doctrine divests this Court of jurisdiction over Van Etten's suit in its entirety because the only relief he seeks is predicated on the overarching claim that the Probate Court "was wrong" to order him to pay child support. See id.; Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 66 (1st Cir. 2018) ("[T]he critical datum is whether the [] federal suit is, in effect, an end-run around a final state-court judgment."). Indeed, the Complaint only seeks an order vacating "[a]ll support orders," damages "caused by" or suffered "due to" those orders, and a permanent injunction preventing CSS-DOR from further collection on those orders. Compl. ¶ 72. Thus, Van Etten's entire suit rests on his allegations that the Probate Court's support orders were "void" because service of the divorce summons was invalid and/or the various "support agreements" he entered into—e.g., the agreements incorporated into the 2008 Judgment of Divorce and the 2009 Judgment of Modification—were "induced by fraud." E.g., id. ¶¶ 20, 24, 34, 43. Those claims are clearly barred under Rooker-Feldman.

The 2008 Judgment of Divorce and 2009 Judgment of Modification that Van Etten seeks

to undo in this lawsuit are "final," and the divorce proceedings "have ended," for purposes of Rooker-Feldman, because the time to appeal them has long-since expired. See G.L. c. 215, § 9 (allowing appeal of "order, judgment, decree, or denial of a probate court . . . within thirty days after the entry thereof"); Klimowicz, 907 F.3d at 65-66 (stating that "state proceedings have ended" for Rooker-Feldman purposes, where "the losing party allows the time for appeal to expire" (quotes and cites omitted)); see also Tyler, 914 F.3d at 52 (finding that state-court proceedings "have ended" where complaint "offers no suggestion that the [state court] will ever reconsider the federal claims [] press[ed]" in federal court).  In light of the specific relief he seeks, Van Etten's suit could only succeed "to the extent that" this Court were to determine that the Probate Court "wrongly decided the issues before it," i.e., that the Probate Court erred with respect to service of process in 2007, or that it erred with respect to the child-support orders entered after that.  See Mandel, 326 F. 3d at 271.  This would include review and undoing of Judge Melia's subsequent order denying Van Etten's motion to vacate in 2024.  Compl. ¶ 44.[8]

Moreover, success of Van Etten's claims against CSS-DOR and the CSS-DOR Individual Defendants, see Compl. ¶¶ 45, 47-48, 53, 55, 71(a), would also require this Court to determine that the Probate Court was wrong to enter and later decline to vacate his child-support orders. CSS-DOR is charged with enforcing and collecting on child-support orders.  Massachusetts law

---

[8] Judge Melia's order is also "final" for Rooker-Feldman purposes because it was not appealed within the prescribed 30-day period, see M.G.L. c. 215, § 9; Ex. 1 at 6 (no notice of appeal docketed).  Van Etten's additional claims against the other Judiciary Defendants, see Compl. ¶¶ 63, 64 – to the extent success on those claims can even support any of the requested relief – similarly invite a compounded review of final state-court judgments dually proscribed by Rooker-Feldman.  Van Etten's appeal from Judge Wrenn's February 2024 order dismissing his first state-habeas petition was never timely docketed, see Ex. 14 (at June 4, 2024 entry, Doc. No. 13), and he did not appeal Justice Georges orders denying his second state-habeas petition to the full SJC, let alone within the seven days allowed under SJC Rule 2:21(1), see Ex. 16.  Thus, these orders are likewise final for Rooker-Feldman purposes, see Klimowicz, 907 F.3d at 65-66, and Van Etten's claims arising from them could only succeed if this Court were to determine that Judge Wrenn and/or Justice Georges were wrong to in dismissing or denying his petitions.

"provides for child support enforcement services in accordance with the provisions of Title IV, Part D of the Social Security Act, 42 U.S.C. §§ 651-669b (2006)" ("Title IV-D"), see Morales v. Morales, 464 Mass. 507, 510 n.5 (2013), and designates CSS-DOR as the agency responsible for administering those services, see M.G.L. c. 119A, § 1. Under the state law implementing Title IV-D, "each judgment or order of support" issued in divorce (M.G.L. c. 208, § 28) "shall include a provision for immediate withholding of income" of a child-support obligor, see M.G.L. c. 119A, § 12(a), "made payable to the IV-D agency on behalf of the [child-support] obligee," id. § 12(b)(2). The statute further provides for the collection of arrearages, which enables CSS-DOR to "execute an order, by any reasonable means . . . to withhold income, without the need for judicial or administrative hearing," see id. § 12(b)(6). The statute further provides avenues for administrative and judicial review of CSS-DOR's enforcement conduct. Id. §§ 16(c), 17.

Here, the 2008 Judgment of Divorce provided that "[a]ll payments [of child-support], including payments on arrearage shall be paid through [CSS-DOR]," see Ex. 5 at 9 (art. V, § I.), and this order remained effective in the 2009 Judgment of Modification, see Ex. 7. Both federal and state law provide mechanisms for the withholding of income from a noncustodial parent against whom a support order has been issued—such as these—as is necessary to "comply with the order . . . [and] to satisfy [any] arrearages." See 42 U.S.C. § 666(b)(1); M.G.L. c. 119A, § 12(b)(6). This requires the IV-D agency (CSS-DOR) to provide notice of the support order to the subject's employer requiring them "to withhold from [the subject's] income the amount specified by such notice . . . and pay such amount . . . to the State disbursement unit." 42 U.S.C. § 666(b)(6)(A)(i); see also M.G.L. c. 119A, § 12. Title IV-D further provides that "[t]he notice given to the employer shall be in a standard format prescribed by the Secretary [of the U.S. Department of Health and Human Services ("HHS")]," see 42 U.S.C. § 666(b)(6)(A)(ii), which

11

Massachusetts has adopted, <u>see</u> M.G.L. c. 119A, § 4(c).  That standard format is a document

entitled "Income Withholding Order," or "IWO," and a sample is available on the HHS website.[9]

Here, Van Etten alleges that "the Income Withholding Order and any Support Order was

void for lack of process."  Compl. ¶ 24.  Thus, for this Court to consider Van Etten's claims that

CSS-DOR and/or the CSS-DOR Individual Defendants were liable for their involvement in

"issu[ing]" or "signing" the IWOs, <u>see</u> Compl. ¶¶ 45, 47-48, 55, 71, or "ignor[ing]" Van Etten's

correspondence about them, <u>id.</u> ¶¶ 24, 26, 31, 60-61, it would "directly frustrate" the underlying

child-support orders the IWO is designed to enforce.  <u>See</u>  <u>Mandel</u>, 326 F.3d at 271-72 (affirming

dismissal, on <u>Rooker-Feldman</u> grounds, of civil-rights action against local police arising from

their attempted enforcement of state child-custody order); <u>see also</u> <u>Miller</u>, 586 F.3d at 59

(affirming dismissal, under <u>Rooker-Feldman</u>, of parents' claims to enjoin adoption of their child

in state custody, as allowing the injunction "would amount to a reversal of the [state court's]

ruling" terminating their parental rights).  In other words, Van Etten's claims against CSS-DOR

and its employees are "inextricably intertwined with the claims adjudicated in [Probate Court]"

and thus likewise outside the scope of this Court's jurisdiction.  <u>See</u> <u>Rosenfeld v. Egy</u>, 346 F.3d

11, 19 (1st Cir. 2003) (quotes and cites omitted); <u>see also</u>  <u>Hart v. Shmayenik</u>, No. 23-cv-4779,

2023 WL 7164975, at *3-4 (S.D.N.Y. Oct. 30, 2023) (dismissing claims about the "invalidity" of

state-agency-issued IWO and seeking to enjoin its enforcement, under the <u>Rooker-Feldman</u>

doctrine, because any alleged injuries caused by the IWO are not "separate from the validity of

the underlying [court-issued, child-support] order").

Furthermore, given that Van Etten's only requests for damages all flow directly from the

Probate Court's orders, <u>see</u> Compl. ¶ 72(c)-(e), all remaining claims against the Register

---

[9] https://www.acf.hhs.gov/css/form/income-withholding-support-iwo-form-instructions-sample

Defendants should likewise be dismissed under <u>Rooker-Feldman</u>. Van Etten alleges, in conclusory fashion, that they "conceal[ed] the docket" from him and "refus[ed]" certain filings, <u>see</u> Compl. ¶¶ 66-69, but the fact remains that the only injuries for which he seeks redress were "caused by" state-court orders. <u>See</u> <u>Efreom</u>, 46 F.4th at 17-18; <u>see also</u> <u>Tyler</u>, 914 F.3d at 50 (<u>Rooker-Feldman</u> applies "[w]here federal relief can only be predicated upon a conviction that the state court was wrong"); <u>see also</u> <u>Hart</u>, 2023 WL 7164975, at *3-4.

In sum, Van Etten's requests for relief can only be allowed if this Court were to determine that the Probate Court's orders allowing service by publication and imposing child-support were wrongly decided. This "attempt to undo the state-court rulings . . . is precisely the sort of 'end-run around [] final state-court judgment[s]' that the <u>Rooker-Feldman</u> doctrine proscribes," and the Complaint should therefore be dismissed in its entirety for lack of subject-matter jurisdiction. <u>See</u> <u>Efreom</u>, 46 F.4th at 17-18 (quoting <u>Klimowicz</u>, 907 F.3d at 66).[10]

---

[10] To the extent Van Etten contends that the Complaint's allegation that the Probate Court lacked personal jurisdiction over him implicates some type of exception to the <u>Rooker-Feldman</u> doctrine, he is wrong. Neither the Supreme Court nor the First Circuit has recognized such an exception, and several circuits have explicitly rejected similar arguments. <u>See</u> <u>Schmitt v. Schmitt</u>, 324 F.3d 484, 487 (7th Cir. 2003) (rejecting argument that <u>Rooker-Feldman</u> did not apply to bar claims that divorce court's orders "were void" because "faulty service of process meant that [it] never had jurisdiction over [plaintiff]"); <u>Rouse v. Nessel</u>, 2022 WL 13631916, at *2 (6th Cir. July 11, 2022) (same, where plaintiff alleged that child-support orders "were void" for lack of personal jurisdiction); <u>see also</u> <u>Skit Intern., Ltd. V. DAC Techs. of Arkansas, Inc.</u>, 487 F.3d 1154, 1156-57 (8th Cir. 2007) (affirming dismissal under <u>Rooker-Feldman</u> where plaintiff sought to set aside state-court judgment as "void" for lack of service of process and personal jurisdiction); <u>Eisenhart v. Eagle Cnty. Sherriff's Office</u>, 2024 WL 3594357, at *2 (10th Cir. July 31, 2024) (same); <u>Williams v. Rudder</u>, 178 F.3d 1301 (Table), 1999 WL 311348 (9th Cir. May 14, 1999) ("[F]ederal courts lack appellate jurisdiction over state court decisions [under <u>Rooker-Feldman</u>], even where the claim is that the state court lacked personal jurisdiction."). As the Seventh Circuit in <u>Schmitt</u> aptly observed, "state courts are competent to determine their own jurisdictional boundaries" and, "[i]f a state court had violated [those boundaries]," a plaintiff is free to bring "that up with the Supreme Court after exhausting his state court remedies." <u>Schmitt</u>, 324 F.3d at 487. Here, Van Etten presented his faulty-service argument to the Probate Court in his 2024 motion to vacate, <u>see</u> Ex. 10. It was denied, and he did not pursue an appeal.

**B. To The Extent Further Proceedings In The Probate Court Case Are Possible, This Court Should Decline Jurisdiction Under *Younger* Abstention**

Even if this Court were to determine that the Probate Court proceedings have not "ended" for <u>Rooker-Feldman</u> purposes—because the Probate Court retains jurisdiction to consider and rule on complaints for modification or similar motions in Van Etten's divorce case, <u>see</u> M.G.L. c. 208, § 28—dismissal is still appropriate under <u>Younger</u> abstention principles. <u>See generally</u> <u>Younger v. Harris</u>, 401 U.S. 37, 46 (1971); <u>Pennzoil Co. v. Texaco Inc.</u>, 481 U.S. 1, 12-14 (1987) (extending <u>Younger</u> to certain civil actions); <u>Sprint Commc'ns v. Jacobs</u>, 571 U.S. 69, 73 (2013) (explaining that <u>Younger</u> abstention applies to ongoing "civil enforcement proceedings" in state courts and to "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions").

The <u>Younger</u> abstention doctrine bars the exercise of federal jurisdiction "when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." <u>Rossi v. Gemma</u>, 489 F.3d 26, 34-35 (1st Cir. 2007). Here, all three prongs of <u>Younger</u> would be met if this Court were to determine that the Probate Court proceeding is "ongoing," albeit Defendants maintain that it has "ended" for <u>Rooker-Feldman</u> purposes, <u>see supra</u> at 9-10. Indeed, prongs two and three are self-evident, as the Probate Court (like all state courts) "must [be] presume[d]" competent and qualified to adjudicate Plaintiff's federal challenges, <u>see</u> <u>Watson v. Ordonez</u>, 318 F. Supp. 3d 456, 460 (D. Mass. 2018). As to prong two, multiple courts in this district have previously determined that proceedings involving the enforcement of child-support orders implicate important state interests, <u>see, e.g.</u>, <u>Watson</u>, 318 F. Supp. at 460 (dismissing, under <u>Younger</u>, claims against DOR and Probate Court, noting that "enforcement of child support [] touches on a core concern of

14

state government" which the state "has a clear interest in"); <u>Gray-Bey v. 42 U.S. Code 654(3)</u>, No. 20-cv-12042, 2021 WL 8323638 at *4 (D. Mass. Mar. 17, 2021) (same, holding that challenges to "[c]hild support matters and issues surrounding the enforcement of child support . . . would be precluded under one or both of" the <u>Rooker-Feldman</u> and <u>Younger</u>-abstention doctrines); <u>Pierre v. Cristello</u>, No. 17-cv-30105, 2017 WL 4768006, at *2 (D. Mass. Oct. 3, 2017) (same); <u>Cimini v. Mass.</u>, No. 11-cv-10211, 2011 WL 2119192, at *4-6 (D. Mass. May 25, 2011) (same); <u>Stratton v. Mass.</u>, No. 06-cv-10829, 2008 WL 4427203, at *5-7 (D. Mass. Sept. 26, 2008) (same).   Each of these cases involved similar claims to those advanced by Van Etten (and in some instances, against the same defendants).  The Court should dismiss the Complaint in its entirety under the same rationale, if it is not satisfied the Probate Court action "has ended."

## II.   THE ELEVENTH AMENDMENT BARS CLAIMS AGAINST THE PROBATE COURT AND CSS-DOR, AND ALL OFFICIAL-CAPACITY CLAIMS.

Even if Van Etten could overcome the <u>Rooker-Feldman</u> bar, his §§ 1983 and 1985 claims against the Probate Court and CSS-DOR should also be dismissed under Fed. R. Civ. P. 12(b)(1) because they are barred by the Eleventh Amendment, and his official-capacity claims against all other Defendants are likewise barred insofar as they seek damages or retrospective relief.

It is well-settled that the Eleventh Amendment to the U.S. Constitution "bars federal suits by citizens against the state or state agencies . . . 'regardless of the relief sought,'" absent abrogation by Congress or waiver.  <u>Brait Builders Corp. v. Mass., Div. of Capital Asset Mgmt.</u>, 644 F.3d 5, 11 (1st Cir. 2011) (cites omitted).  To the extent state employees are sued in their "official capacities, they stand in the shoes of the state and enjoy the same immunity." <u>Coggeshall v. Mass. Bd. of Registration of Psychologists</u>, 604 F.3d 658, 662 (1st Cir. 2010). "Congress has not abrogated, and Massachusetts has not waived, its Eleventh Amendment immunity for civil-rights claims brought under 42 U.S.C. § 1983 or § 1985."  <u>Cline v. Burke</u>, 682

F. Supp. 3d 125, 131 (D. Mass. 2023) (citing <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 66 (1989) and <u>Coggeshall</u>, 604 F.3d at 662) (further explaining that neither the states, their agencies, nor their employees are "'persons' subject to suit under § 1983 for damages").

Accordingly, Van Etten's claims against the Probate Court and CSS-DOR, which are both state agencies, <u>see</u> M.G.L. c. 119A, § 1 (CSS-DOR); M.G.L. c. 211B, § 1 (Probate Court); M.G.L. c. 215, § 1 (Probate Court and Register), are barred, and his claims against the Individual Defendants in their official capacities, who are all state officials, <u>see</u> Compl. at 1-3, are likewise barred to the extent he seeks monetary or retrospective declaratory or injunctive relief. <u>See, e.g.</u>, <u>Cline</u>, 682 F. Supp. 3d at 131 (dismissing §§ 1983 and 1985 claims arising out of child-support collection efforts brought against the Probate Court, Defendant Cristello, Defendant Fattman, state judges, and employees of DOR).[11]

## III.  THE COMPLAINT FAILS TO STATE ANY INDIVIDUAL CAPACITY CLAIM

Finally, even if the <u>Rooker-Feldman</u> or <u>Younger</u> abstention doctrines did not divest this Court of subject-matter jurisdiction over some or all of Van Etten's claims against the Individual Defendants in their individual capacities, each of those claims—to the extent they even seek any relief from the Individual Defendants, <u>but see</u> <u>supra</u> at 8-13—would either be barred by absolute immunity or otherwise fail to state a claim under Fed. R. Civ. P. 12(b)(6).

---

[11] Although <u>Ex Parte Young</u> allows a party to sue a state official in his or her official capacity for "prospective equitable relief enjoining future violations of federal law," <u>see</u> <u>Tyler v. Mass.</u>, 981 F. Supp. 2d 92, 95-96 (D. Mass. 2013), the only prospective relief sought here appears to be targeted to stop CSS-DOR's child-support collection efforts.  Compl. ¶ 72(a).  But, as discussed above, the Court lacks subject-matter jurisdiction to issue such relief, under the <u>Rooker-Feldman</u> doctrine and/or <u>Younger</u> abstention, as doing so would frustrate or interfere with the Probate Court's child-support orders.  In any event, the Complaint fails to state any federal claim for relief against either of the CSS-DOR Individual Defendants, for the reasons discussed <u>infra</u> at 20-25.  <u>See also</u> <u>Tyler</u>, 981 F. Supp. 2d at 96 (noting that, even under <u>Ex Parte Young</u>, federal courts lack authority to award injunctive relief against state officials based on a violation of state law (citing <u>Pennhurst Sch. Hosp. v. Halderman</u>, 465 U.S. 89, 106 (1984)).

**A.  The Judiciary Defendants Are Protected From Suit By Judicial Immunity.**

Each of Van Etten's claims against the Judiciary Defendants (Melia, Wrenn, and Georges), see Compl. ¶¶ 44, 63, 64, are barred by absolute judicial immunity.  "There is no question that [judges are] protected by absolute immunity from civil liability for any normal and routine judicial act."  See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)).  This is "not just immunity from damages, but immunity from suit altogether."  Zenon v. Guzman, 924 F.3d 611, 617 n.10 (1st Cir. 2019).  It applies even where a judge's actions "are malicious, corrupt, mistaken, or taken in bad faith," so long as the act "was one normally performed by a judge" and the judge was acting "in his or her judicial capacity."  Id. at 616-17.

Here, each of Van Etten's claims against the Judiciary Defendants attack conduct that was plainly judicial in nature and taken in their judicial capacities in connection with either the Probate Court matter or one of his collateral attacks on his child-support orders.  See Comp. ¶¶ 44, 63, 64.  Thus, Van Etten's claims against these defendants are barred by judicial immunity.  Cf. See Rodriguez v. Ulwick, No. 21-cv-10438, 2021 WL 2092921, at *2 (D. Mass. Apr. 14, 2021), aff'd, 2022 WL 17228795 (1st Cir. June 15, 2022) (dismissing claims against state-court probate judge "relate[d] to judicial actions in the [plaintiff's] divorce . . . proceedings").

Moreover, Judge Melia's immunity is unaffected by the Complaint's conclusory allegations that the Probate Court "never [] lawfully" gained personal jurisdiction over Van Etten due to procedural defects with the service by publication in 2007, see Compl. ¶¶ 21, 22, 34, 44.  Although "actions taken in the clear absence of *all jurisdiction* will deprive a judge of absolute immunity," Cok, 876 F.2d at 2 (emphasis added), such a "clear absence" has not been sufficiently pled here.  Courts have explained that "the necessary inquiry" in this respect "is whether at the time [the judge] took the challenged action he had jurisdiction *over the subject*

17

*matter* before him."  Guzmán-Rivera v. Lucena-Zabala, 642 F.3d 92, 99 (1st Cir. 2011) (emphasis added) (quoting Stump, 435 U.S. at 356).  If the judge did, he is "absolutely immune . . . for his judicial acts even . . . [if] flawed by the commission of grave procedural errors."  Id. Thus, even if the Complaint adequately alleged that there was a procedural defect with respect to the 2007 service of process under Mass. R. Dom. Rel. P. Rule 4 (which Defendants do not concede), the fact remains that Judge Melia, as an Associate Justice of the Probate Court,[12] had "general jurisdiction over the subject matter of the [divorce] action," in which  Van Etten's child-support orders were issued and his 2024 motion to vacate was presented.  See Sullivan v. Kelleher, 405 F.2d 486, 487 (1st Cir. 1968) (affirming dismissal of § 1983 claims against state-court clerk arising from issuance of default judgement against plaintiff on judicial immunity grounds, and bypassing question of whether any procedural defects with service existed, because court "had general jurisdiction over the subject matter of the action"); Cintron Rodriguez v. Pagan Nieves, 736 F. Supp. 411, 413 & n.1 (D. P.R. 1990) (rejecting argument that judicial immunity is vitiated by service defect in underlying state-court action).

**B.  The Register Defendants Are Protected From Suit By Quasi-Judicial Immunity.**

Similarly, Van Etten's claims against the Register Defendants (i.e., Fattman, Stewart, Brown, and Consolmagno), see Compl. ¶¶ 66-69, are barred by absolute quasi-judicial immunity. "The doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that are inextricably intertwined with the judicial function."  D'Angelo v. N.H. Supr. Ct., 740 F.3d 802, 808 (1st Cir. 2014) (quoting Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012)); see also Sullivan, 405 F.2d at 487 ("[T]he immunity accorded to judges extends to other officers

---

[12] Massachusetts law provides that the Probate and Family Court "shall have exclusive original jurisdiction of actions for divorce," M.G.L. c. 215, § 3, and "actions relative to the care, custody . . . of minor children," id. § 4.

of government whose duties are related to the judicial process." (quotes and cites omitted)).

Courts in this district and elsewhere have consistently applied the doctrine to protect court personnel—like clerks and probate registers—from civil liability arising from their performance of "core clerical duties in support of the adjudication of cases." See, e.g., Powell v. Commonwealth, No. 16-cv-30004, 2016 WL 7115887, at * 7 (D. Mass. Sept. 20, 2016) (collecting cases). The purpose of that application is to avoid "the danger that disappointed litigants, blocked . . . from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Cline, 682 F. Supp. 3d at 132 (quotes and cites omitted).

Here, quasi-judicial immunity bars Van Etten's claims against the Register Defendants because he alleges improper conduct that is "intimately associated with the performance of core judicial functions." Nystedt, 700 F.3d at 32. Indeed, Van Etten appears to allege that the Register Defendants are liable "for conceal[ing]" portions of the Probate Court docket and "refus[ing] to" docket and/or returning certain mailings he submitted to the Register's office for filing in the Probate Court action. Compl. ¶¶ 24-25, 27, 66-69. Under Massachusetts law, maintenance of the Probate Court docket and acceptance of Probate Court filings are duties entrusted to the Register and his or her staff. See M.G.L. c. 215, § 1 (establishing a Register of Probate for each county division of the Probate and Family Court); M.G.L. c. 215, § 37 (entrusting the Register with docket maintenance); M.G.L. c. 217, § 21 (empowering the Register to "receive and place on file complaints, petitions, and applications to the probate court . . . and [to] issue orders of notice, summonses and citations in like manner and with like effect as if issued by the judge"). Courts have recognized that these and like duties implicate "core clerical functions" that are integral to the judicial process, and their performance or omission cannot give rise to civil liability due to quasi-judicial immunity. See, e.g., Powell, 2016 WL

19

7115887, at *7 (citing <u>Nystedt</u>, 700 F.3d at 30) (collecting cases, and dismissing §§ 1983 and 1985 claims against clerks-office personnel based on their accepting or rejecting documents for filing and "communicating with the parties of the litigation"); <u>Ives v. Agastoni</u>, No. 15-cv-30153, 2015 WL 9647559, at *3 (D. Mass. Dec. 14, 2015), <u>R&R adopted</u>, 2016 WL 79881 (D. Mass. Jan. 5, 2016) (same, holding that "accepting filings" and "recording rulings" are judicial functions "regularly performed by judges and clerks within the scope of their jurisdiction"); <u>McNeil v. Bristol Cnty. Probate</u>, No. 16-cv-11712, 2016 WL 5799014, at *2 (D. Mass. Oct. 3, 2014) (dismissing § 1983 claims against probate Register employees arising from alleged dereliction of duties); <u>Bowen v. Worcester Family & Probate Ct.</u>, No. 14-cv-40113, 2014 WL 5106419, at *2 (D. Mass. Oct. 9, 2014) (same); <u>Lewis v. West Roxbury Dist. Ct.</u>, No. 12-cv-11544, 2013 WL 4854117, at *6 (D. Mass. Sept. 10, 2013) (dismissing § 1983 claims against clerk for "failing to record [plaintiff's] case accurately and ignoring his [document] request," as the alleged improper discharge of these duties "arise directly from the Clerk's role in supporting the adjudication of cases"). Van Etten does not plausibly allege any facts warranting a departure from, or exception to, this long line of precedent. Thus, his claims against the Register Defendants in their individual capacities should alternatively be dismissed as barred by quasi-judicial immunity. <u>See</u> <u>Nystedt</u>, 700 F.3d at 32-33 (holding that "perceived procedural glitches," "irregularities," or "negligent performance" "will not divest the cloak of . . . immunity").

   **C. The Complaint Fails To State A Plausible Claim For Relief Against The CSS-DOR Individual Defendants (Cristello and Denham).**

Van Etten's only individual-capacity claims not also barred by absolute judicial or quasi-judicial immunity are those against the CSS-DOR Individual Defendants (Cristello and Denham). Because he fails to state a plausible claim for relief against either of them, those claims are alternatively subject to dismissal under Fed. R. Civ. P. 12(b)(6).

20

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "In evaluating whether a plaintiff has met this burden, [the court] 'accept[s] the complaint's well-pleaded facts as true and indulge[s] all reasonable inferences in the plaintiff's favor.'" Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 33 (1st Cir. 2020) (cites omitted). But the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must set forth "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. Accordingly, courts must disregard a complaint's "unsupported conclusions or interpretations of law," Rae v. Woburn Public Sch., 113 F.4th 86, 98 (1st Cir. 2024), and determine whether the "non-conclusory, non-speculative factual allegations" plausibly establish "each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024). Where a complaint fails to do so, it should be dismissed. Pitta, 90 F.4th at 17. A party's "*pro se* status does not insulate [that] party from complying with procedural and substantive law." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

Here, Van Etten asserts four counts against Cristello, each based solely on her "signing income withholding orders" issued against him. See Compl. ¶¶ 45, 47, 55, 71 (Counts 1-2, 5, 10). And he asserts two counts against Denham, based upon his "refusal to answer interrogatories" propounded to CSS-DOR in the 2023 Superior Court action, see Compl. ¶¶ 25, 57 (Count 6), and his "ignoring" certain documents that Van Etten mailed to CSS-DOR, id. ¶¶

21

24, 26, 60 (Count 7).  Additionally, Count 3 purports to assert a conspiracy claim against all Defendants under 42 U.S.C. § 1985.  For several reasons, Van Etten fails to plausibly state a claim for relief on any of these counts.

First, each of these counts purports to be brought under 18 U.S.C. §§ 241, 242, which are federal criminal statutes that cannot support a civil action for damages.  Van Etten does not have standing to pursue criminal charges against Cristello and Denham under 18 U.S.C. §§ 241, 242, or § 1341 (Count 5), and these claims are therefore subject to dismissal.  See Cok, 876 F.2d at 2 (noting that "[g]enerally, a private citizen has no authority to initiate a federal criminal prosecution" under §§ 241, 242); see also Francisco of Family Santos v. Essex Cnty., No. 19-cv-10387, 2019 WL 3557703, at *2 (D. Mass. Aug. 5, 2019) (dismissing similar claims arising from child-support enforcement brought under §§ 241, 242); Turner v. Melia, No. 20-cv-40097, 2021 WL 11715616, at *3 (D. Mass. Jan. 13, 2021) (dismissing claim brought under § 1341).

Second, to the extent Van Etten appears to also assert certain constitutional or other federal violations in Counts 2, 6, 7, and 10, he fails to plead any actionable claim.  Count 2, against Cristello, cites to the Sixth Amendment but Van Etten does not allege any facts that could plausibly support a violation of a Sixth Amendment right, which pertains to "the accused" "[i]n [a] criminal prosecution," see U.S. Const., Am. VI.  See, e.g., Pasdon v. City of Peabody, 417 F.3d 225, 228 (1st Cir. 2005) (affirming dismissal of Sixth-Amendment based § 1983 claims arising from investigation into restraining order violation, holding that "[plaintiff] has no cause of action under [] § 1983" because "[he] was not subjected to a criminal trial").  Count 10, against Cristello, cites to the Seventh Amendment, which provides a "right to a jury trial . . . 'in federal court, but not in state court.'"  Francisco, 2019 WL 3557703, at *3 (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 418 (1996)).  Here too, Van Etten fails to plausibly

22

allege any facts supporting a claim that he was deprived of his Seventh Amendment right. See id. (dismissing Seventh-Amendment based § 1983 claim arising from enforcement of child-support order); see also Stonehill Coll. v. Mass. Comm'n Against Discrimination, 441 Mass. 549, 566 n.20 (2004) ("Indisputably, no constitutional right to a jury trial attaches in the Probate and Family Court."). Count 6, against Denham, also purports to be brought under "Rule 33," presumably referring to Mass. R. Civ. P. 33, which does not support a claim for civil liability. Finally, Count 7 against Denham, also cites to 15 U.S.C. § 1692g, which is a provision of the Fair Debt Collection Practices Act ("FDCPA") imposing certain notice and validation requirements upon "debt collector[s]" in connection with the collection of a "debt" – as both terms are defined in § 1692a – that can give rise to civil liability if not followed, see id. § 1692k. However, the only "debt" related to the notices that Van Etten alleges were "ignored" by Denham were his child-support obligations, see Compl. ¶¶ 24, 26, 60, and "the obligation to pay child support is not a 'debt' under the [FDCPA]," see Raffaele v. Marrama, 164 F. Supp. 2d 224, 227 (D. Mass. 2001) (dismissing similar claim), which is defined as a monetary obligation arising from a "transaction" for "consumer" goods or services, see 15 U.S.C. § 1692a(5). Moreover, the term "debt collector" is defined to exclude "any officer or employee of . . . any State to the extent collecting or attempting to collect any debt is in the performance of [their] official duties." Id. § 1692a(6)(C); Hart, 2023 WL 7164975, at *2-3 (dismissing FDCPA claim against state child-support collection agency). Thus, this claim must also be dismissed.[13]

---

[13] Even if Van Etten had intended to, or brought, Counts 2, 5-7, or 10 under § 1983 instead of 18 U.S.C. §§ 241, 242, they would fair no better for these same reasons. Additionally, the Complaint fails to plausibly allege that either Cristello or Denham, through their own individua conduct, acted to deprive Van Etten of any federally protected right. See Iqbal, 556 U.S. at 676 (no vicarious liability under § 1983). Moreover, although the Complaint also cites to the Fourth Amendment in its jurisdictional statement, see Compl. ¶ 2, it fails to plead any facts plausibly supporting a Fourth Amendment violation by any Defendant. See, e.g., Hart, 2023 WL

Third, insofar as Count 1 purports to bring a § 1983 claim against Defendant Cristello for violating Van Etten's Fourteenth Amendment Due Process rights, Van Etten fails to allege any facts that could plausibly support such a claim. To state a claim under § 1983, a plaintiff must plead facts to establish that the defendant state actor's "conduct was the cause in fact of the alleged deprivation" of a constitutional right. Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (cites and quotes omitted). "Because vicarious liability is inapplicable to [] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," Iqbal, 556 U.S. at 676.

Here, Van Etten alleges only that Cristello (i) failed to respond to a "notice" he sent her in July 2024 "contesting an income withholding order" issued by CSS-DOR, Compl. ¶ 35, and (ii) "sign[ed] income withholding orders multiple times without due process of law and without signature of a judge and seal of the court," id. ¶ 44. None of these bare assertions identifies conduct even remotely close to a due-process violation, whether procedural or substantive.[14] Indeed, in a similar lawsuit challenging enforcement of a Massachusetts child-support order, the court held that allegations that CSS-DOR employees "failed to return plaintiff's phone calls [or] respond to a letter from [her]" concerning collection of child-support payments "do not rise to the level of a cognizable federal or state claim and are frivolous." Tringali v. Attuso, No. 14-cv-124, 2014 WL 1653274, at *5 (D. N.H. Apr. 24, 2014), aff'd, No. 14-1775 (1st Cir. Apr. 9, 2015). The Tringali court further dismissed plaintiff's procedural due-process claims on the

7164975, at *4 (holding that the "collection of child support" does not implicate any Fourth Amendment right).

[14] To state an actionable substantive due process claim, a plaintiff must allege facts that the state actor's conduct "objectively shocks the conscience," such as "arbitrariness and caprice [that is] stunning, evidencing more than humdrum legal error" or "bad faith." S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc., 775 F.3d 82, 91-92 (1st Cir. 2014) (quotes and cites omitted). Van Etten does not come anywhere close to alleging facts sufficient to state a substantive due process claim against Cristello.

grounds that M.G.L. c. 119A, § 16(c) "clear[ly]" provides "an avenue for seeking administrative and judicial review" of child-support collection efforts that is "an adequate post-deprivation remedy" for due-process purposes.  Id. at *4; see also Francisco, 2019 WL 3557703, at *3 (same, discussing additional procedural safeguards in M.G.L. c. 119A).  Because Van Etten fails to identify any constitutional defects with the processes afforded under M.G.L. c. 119A—or even allege that he availed himself of those potential state remedies—Count 1 must be dismissed, if not fully barred by the jurisdictional impediments discussed above.  See Francisco, 2019 WL 3557703, at *3; Bos. Env't Sanitation Inspectors Ass'n v. City of Boston, 794 F.2d 12, 13 (1st Cir. 1986) ("[Plaintiff] cannot complain of a violation of procedural due process rights when [they] have made no attempt to avail themselves of existing state procedures.").

Finally, Van Etten has not stated an actionable claim for conspiracy under § 1985, see Compl. ¶ 51 (Count 3), because he has not alleged any facts plausibly supporting the existence of a conspiratorial agreement among Defendants Cristello or Denham, or any other defendant, nor any underlying constitutional misconduct.  See, e.g., Alston v. Spiegel, 988 F.3d 564, 577-78 (1st Cir. 2021) ("Vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss").

## CONCSLUSION[15]

For the foregoing reasons, this Court should dismiss the Complaint in its entirety, including all claims against all Defendants, with prejudice.

---

[15] Because the Complaint must be dismissed in its entirety, this Court should deny as moot Van Etten's motion for preliminary injunction, see Dkt. 18, and "emergency motion," see Dkt. 31.  See, e.g., Bowen, 2014 WL 5106419, at *1.  To the extent this Court is inclined to consider the merits of those pending motions, Defendants respectfully rely upon the arguments herein and those advanced in their opposition to Van Etten's emergency motion, see Dkt. 32, as demonstrating that Van Etten has no likelihood of success on the merits of his claims supporting his request for preliminary injunctive relief against Defendant CSS-DOR or any other Defendant.

Respectfully submitted,

Defendants,

STEPHANIE K. FATTMAN, ASHLEY STEWART, MEGAN BROWN, ANGELINA CONSOLMAGNO, MICHELE CRISTELLO, JENNIFER MELIA, DANIEL M. WRENN, SERGE GEORGES JR., MICHAEL S. DENHAM, WORCESTER PROBATE AND FAMILY COURT, and CHILD SUPPORT SERVICES DIVISION.

By their attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ John Potapchuk*
John L. Potapchuk, BBO# 699027
Assistants Attorney General
Government Bureau/Trial Division
One Ashburton Place, 18th Floor
Boston, MA 02108
Date:  November 14, 2024          (617) 963-2441 | john.potapchuk@mass.gov

## LOCAL RULE 7.1 CERTIFICATION

I, John L. Potapchuk, Assistant Attorney General, hereby certify that I have conferred with *pro se* Plaintiff Gregory Alvin James Van Etten by telephone on November 12, 2024, in a good faith effort to narrow the issues presented in Defendants' Motion, but the parties were unable to reach any agreement.

*/s/ John Potapchuk*
John L. Potapchuk

## CERTIFICATE OF SERVICE

I, John L. Potapchuk, Assistant Attorney General, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants in the Notice of Electronic Filing (NEF), and a copy was also sent to Plaintiff Gregory Alvin James Van Etten via email to his email address on record, jim.vanetten@gmail.com, on November 14, 2024.

*/s/ John Potapchuk*
John L. Potapchuk