UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GREGORY J. VAN ETTEN<br>　　　Plaintiff,<br><br>v.<br><br>STEPHANIE K. FATTMAN, ET AL.,<br>　　　Defendants. | Civil Action No.<br>4:24-40113-MRG |

## REPORT AND RECOMMENDATION

**December 10, 2024**

**HENNESSY, M.J.**

    This case is before the Court on Plaintiff Gregory Van Etten's ("Mr. Van Etten") Emergency Motion to Stay Income Withholding Order and First Motion for Preliminary Injunction. Dkt. Nos. 18, 31. Defendants, who include the Worcester Probate and Family Court, Child Support Service Department of Revenue ("CSS-DOR"), three state court judges, four state court Registry employees, and two CSS-DOR employees, oppose both motions. Dkt. Nos. 32, 42. On November 13, 2024, these motions were referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A). Dkt. No. 40. For the reasons stated herein, I RECOMMEND both motions be DENIED.

    I.    BACKGROUND

    Mr. Van Etten initiated this matter pro se, invoking 42 U.S.C. §§ 1983 and 1985 and alleging Defendants violated his constitutional rights through conduct and various proceedings that occurred in the Worcester Probate and Family Court, Superior Court, and Supreme Judicial Court, and through the collection of his wages pursuant to Income Withholding Orders. Dkt. No.

1

1 ¶¶ 12-41.  Plaintiff names the following Defendants in the complaint:  the Worcester Probate and Family Court, CSS-DOR, Associate Justice Probate and Family Court Jennifer Melia, Associate Justice Superior Court Daniel M. Wrenn, Associate Justice Supreme Judicial Court Serge Georges Jr. ("Judiciary Defendants"), Register of Probate Stephanie K. Fattman, Register of Probate Ashley Stewart, Assistant Register Megan Brown, Assistant Register Angelina Consolmagno ("individual Registry Defendants"), and CSS-DOR Deputy Commissioner Michele Cristello, Counsel for CSS-DOR Michael S. Denham ("individual CSS-DOR Defendants").  See id. at pp. 1-3.

The facts presented in the complaint date back to divorce proceedings initiated by Plaintiff's ex-wife in 2007 in the Worcester Probate and Family Court.  Id. at ¶ 12.  In 2008 the Probate and Family Court issued a judgment of divorce.  Van Etten v. Van Etten, No. WO0D1562DV1 (Mass. Prob. & Fam. Ct.).[1]  Plaintiff was ordered to pay child support, which was calculated based on his income from his previous occupation, although Plaintiff had left his previous job to become a Pastor.  Dkt. No. 1 at ¶¶ 14-17.  Plaintiff later declared bankruptcy, due to the costs associated with child support and supporting two households, which resulted in him losing his home and car.  Id. at ¶ 18.  Plaintiff claims he was under duress as a result of the divorce proceedings and that the support agreement was induced by fraud.  Id. at ¶ 20.

Plaintiff also claims that until sometime in 2023, he was unable to view some docket entries in the divorce case, including entries concerning service of process.  Id. at ¶ 23.  Plaintiff asserts that upon accessing those entries, he discovered that in 2007 he was improperly served by alternate service by publication and mailing, which the court had permitted.  Id. at ¶¶ 21-22, 34.

---

[1] This Court can take judicial notice of state court records in related proceedings.  Wiener v. MIB Grp., Inc., 86 F.4th 76, 81 n.3 (1st Cir. 2023).  The court issued a Judgment of Modification on June 25, 2009, reducing the amount Plaintiff owes in child support.  Van Etten v. Van Etten, No. WO0D1562DV1 (Mass. Prob & Fam. Ct.).  Plaintiff sought to modify the judgment in 2010 and again in 2014 and the court dismissed both motions.  Id.

As a result, he now argues that he was not afforded due process, and therefore the Probate and Family Court's support orders must be declared null and void. Id.

The complaint also alleges that conduct by the courts and its officers in 2023 and 2024 violated Plaintiff's rights. In 2023 and 2024 Plaintiff filed or attempted to file a number of documents and motions in the Probate and Family, Superior, and Supreme Judicial Courts, including: a notice of no contract, interrogatories, a motion for injunction, and two petitions for writ of habeas corpus. Id. at ¶¶ 24-25, 27-30, 32-33, 36-39. Plaintiff's motions and petitions were denied, and the filings were rejected or not answered. Id. Plaintiff also directed several filings to CSS-DOR and the individual CSS-DOR Defendants, to which he did not receive responses. See id. at ¶¶ 24-26, 31, 35.

The complaint seeks a permanent injunction enjoining any collection efforts including pursuant to Income Withholding Orders, a declaration that all support orders are null and void, return of prior payments "collected by fraud," and relief from financial losses "caused by" and "due to" Defendants' conduct and orders. Id. at p. 16.

Plaintiff's First Motion for Preliminary Injunction requests a preliminary injunction prohibiting Defendants from enforcing Income Withholding Orders and other collection actions during the pendency of this litigation. Dkt. No. 18 at p. 1. Plaintiff argues he is likely to succeed on the merits because the Probate and Family Court lacked jurisdiction over him, seizure of his property violates the Fourth Amendment and Seventh Amendment because he was not afforded a jury trial, and the Income Withholding Orders are invalid because they do not contain a court seal and are not signed by a judge. Id. at ¶ 1. He also argues that he would suffer irreparable harm if the relief requested is denied, that his harm outweighs any harm to the Defendants if relief is granted, and that addressing the deprivation of rights is always in the public's interest.

Id. at ¶¶ 2-4.  Plaintiff's Emergency Motion—filed two weeks after the First Motion for Preliminary Injunction was filed and just six days after this Court granted Defendants' motion for extension of time to respond to the complaint and preliminary injunction motion—requests the same relief as stated in the preliminary injunction motion: "to stay income withholding order pending court hearing and ruling on the complaint."  Dkt. No. 31 at p. 1.  In this emergency motion Plaintiff makes the same arguments as to his likelihood of success on the merits, id. at ¶¶ 6-9.  The Court thus considers these motions together.

## II.  PRELIMINARY INJUNCTION STANDARD

To succeed on a motion for preliminary injunction the moving party must demonstrate "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest."  Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).  Injunctive relief is "to be used sparingly, and only in a clear and plain case."  Rizzo v. Goode, 423 U.S. 362, 378 (1976).  "The burden is on the moving party to establish that consideration of these factors supports the issuance of a preliminary injunction."  Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc., 759 F. Supp. 2d 110, 117-18 (D. Mass. 2010).  The Court is free to accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits."  Id. at 114 n.2 (quoting Elrod v. Burns, 427 U.S. 347, 350 n.1 (1976)).  And because Mr. Van Etten is proceeding pro se, his complaint must be construed liberally.  Baillargeon v. CSX Transp. Corp., 463 F. Supp. 3d 76, 83 (D. Mass. 2020).

A full evidentiary hearing in open court is not required to resolve a request for an injunction.  Aoude v. Mobil Oil Corp., 862 F.2d 890, 893 (1st Cir. 1988).  Given Defendants largely do not dispute the facts presented by the Plaintiff and instead argue that Plaintiff's claims

4

are barred by specific legal doctrines, the Court can proceed to issue a report and recommendation considering the facts and arguments presented in the parties' filings. Id. at 894.

### III. APPLICATION

#### A. Likelihood of Success

Plaintiff fails at the first prong: likelihood of success on the merits. "The sine qua non of th[e] four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). In the complaint, Emergency Motion and First Motion for Preliminary Injunction, and reply to Defendants' opposition to the Emergency Motion, Plaintiff makes clear that the claim for the relief he seeks in this lawsuit "can only succeed if this Court were to determine that the Probate Court's orders allowing service by publication and imposing child-support were wrongly decided." Dkt. No. 34 ¶ 1. Because such relief is barred by the Rooker-Feldman doctrine, the application of which shows this Court lacks subject matter jurisdiction over this case, Plaintiff is unlikely to succeed on the merits. Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 6 (1st Cir. 2004). This Court is required to determine that it has jurisdiction before proceeding to the merits. Lance v. Coffman, 549 U.S. 437, 439 (2007). And it need not consider the merits of claims it determines it does not have jurisdiction to consider under the Rooker-Feldman doctrine. Efreom v. McKee, 46 F.4th 9, 16-17 (1st Cir. 2022).

To the extent some of Plaintiff's claims are not barred by the Rooker-Feldman doctrine, Plaintiff is equally unlikely to succeed on the merits of these claims because they are barred by various immunity doctrines and those claims that may not be barred otherwise fail to state a claim.

i. Rooker-Feldman

The Rooker-Feldman doctrine[2] precludes lower federal courts from exercising subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). For the following reasons most of Plaintiff's claims are barred by the Rooker-Feldman doctrine.

First, Plaintiff meets the definition of state-court loser: he is seeking this Court's review and reversal of state-court judgments adverse to his finances, namely orders which require him to pay child support, and judgments denying his attempts to collaterally attack those orders. Efreom, 46 F.4th at 17. Indeed, each judgment referenced in the complaint concerns a decision adverse to Plaintiff. See Dkt. No. 1 at ¶¶ 17, 30, 32-33, 39.

Second, Plaintiff commenced this action after the state court judgments were rendered and those proceedings had ended. Plaintiff filed this suit on September 5, 2024. The relevant orders of the Probate and Family Court were issued on January 22, 2008, the Judgment of Divorce, and June 16, 2009, Judgment of Modification, which provided that Plaintiff is obligated to make weekly support payments through the DOR. Van Etten v. Van Etten, WO07D1562DV1 (Mass. Prob. & Fam Ct.). The complaint also refers to judgments of the Superior Court and of a single justice of the Supreme Judicial Court issued in 2023 and 2024. Dkt. No. 1 at ¶¶ 30, 32-33 39. Plaintiff's time to appeal these judgments has since passed. See M.G.L. c. 215 § 9; SJC

---

[2] "Rooker-Feldman doctrine" is shorthand reference to the Supreme Court's interpretation of 28 U.S.C. § 1257 in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

Rule 2:21(1); Mass. R. App. Pr. 4(a).[3] Where a "state court issues a judgment and the losing party allows the time for appeal to expire, [] the state proceedings have ended" for the purposes of Rooker-Feldman. Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005); see also Tyler v. Supreme Judicial Court of Mass., 914 F.3d 47, 52 (1st Cir. 2019) (family court proceedings ended where there is no suggestion that state court "will ever reconsider the federal claims [plaintiff] presses here").

Third, the injuries Plaintiff complains of were caused by the state court judgments.

**Probate and Family Court and Judiciary Defendants.** Plaintiff's claims against the Probate and Family Court and Judiciary Defendants (Counts I, II, IV, VIII) allege violations of Plaintiff's constitutional rights and claim that state court judgments caused these injuries, specifically that: the Probate and Family Court violated Plaintiff's due process rights in permitting and accepting the insufficient alternative service by publication (Count I), Judge Melia denied his due process rights in denying the motion to vacate a void judgment (Count I), the Probate and Family Court denied his right to a jury trial under the Seventh Amendment by issuing support orders absent a jury trial (Count II),[4] the Probate and Family Court forced Plaintiff to work a corporate job to satisfy the support order (Count IV), and Judges Wrenn and Georges denied Plaintiff free access to the courts by dismissing his filings or denying the relief requested (Count VIII). Each of these counts clearly states that Plaintiff's injuries were caused

---

[3] There is no entry on the Probate and Family Court docket indicating Plaintiff appealed any of that court's judgments. See Van Etten v. Van Etten, WO07D1562DV1 (Mass. Prob. & Fam. Ct.). A Superior Court docket entry notes Plaintiff did not timely docket an appeal in the Appeals Court. See In re Van Etten, 2485CV00026 (Mass. Sup. Ct.). And no notice of appeal is listed on the Supreme Judicial Court docket from Plaintiff's first habeas petition, Child Support Enforcement Division Mass. Department of Revenue v. Van Etten, SJ-2023-0477 (Mass.), which was transferred to the Superior Court. Nor is there any indication that Plaintiff filed an appeal from the Superior Court's judgment. See Van Etten v. Child Support Enf't Div. Mass. Dep't of Revenue, 2384CV00390 (Mass. Sup. Ct.). And there is no indication Plaintiff appealed the denial of his second habeas petition. See Child Support Enf't Div. Mass. Dep't of Revenue v. Van Etten, SJ-2024-0115 (Mass.).

[4] Here and in other parts of his filings, Mr. Van Etten erroneously cites to the Sixth Amendment which protects the jury trial right of criminal defendants.

by specific judgments of the Probate and Family Court and the named judges.[5]  Bauersachs v. Gaziano, No. 21-cv-11866, 2022 WL 4111911, at *4 (D. Mass. Sept. 8, 2022), aff'd No. 22-1772, 2023 WL 7001673 (1st Cir. May 15, 2023).

**CSS-DOR & Defendant Cristello.**  The claims against CSS-DOR and Defendant Cristello include allegations that they violated Plaintiff's Seventh Amendment jury trial right because CSS-DOR issued Income Withholding Orders and bank garnishments of Plaintiff's wages without due process of law, that these orders lacked a judge's signature or a court seal, and Defendants forced Plaintiff to work in a corporate environment to be able to make child support payments (Counts II, IV (CSS-DOR) and Counts I, II, V, X (Cristello)).  These counts refer to the 2008 Judgment of Divorce and 2009 Judgment of Modification which explicitly order Plaintiff to pay child support through the DOR.  Van Etten v. Van Etten, WO07D1562DV1 (Mass. Prob. & Fam Ct.); see Morales v. Morales, 464 Mass. 507, 510 n. 5 (2013) (DOR administers child support enforcement services as required by law).  Therefore, Plaintiff's allegations that the Income Withholding Orders issued by CSS-DOR and signed by Cristello violated his constitutional rights seeks "an end-run around a final state-court judgment." Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 66 (1st Cir. 2018).  Rooker-Feldman prohibits such a maneuver because it effectively asks this Court to issue an order prohibiting CSS-DOR from collecting payments which, in turn, would nullify the state court child support order.  id.; see also Mandel v. Town of Orleans, 326 F.3d 267, 272 (1st Cir. 2003) (district court injunction enjoining state police from assisting parent in obtaining custody of children in

---

[5] Nor does the fact that Plaintiff challenges the Probate and Family Court's jurisdiction over him change this Court's application of the Rooker-Feldman doctrine.  Its application is not limited to instances where the challenges raised in federal court are identical to those raised in the state court proceedings, Tyler, 914 F.3d at 51, and any challenge to the Probate and Family Court's jurisdiction over Plaintiff should have been raised on appeal from the Probate and Family Court orders.  Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps., 471 F.3d 220, 223 (1st Cir. 2006).

compliance with state court order violated Rooker-Feldman because it frustrated state court custody order).

**All Defendants.**  Plaintiff also alleges that "[a]ll Defendants conspired to block, interfere with, and intimidate [Plaintiff] into submitting to unlawful orders."  Dkt. No. 1 at ¶ 51.  However, a claim that "alleges in general, conclusory terms that the [defendants] conspired to cause the state court to reach a wrong result" is barred by the Rooker-Feldman doctrine.  O'Callaghan v. Shirazi, No. 00-1148, 2000 WL 560172, at *1 (1st Cir. May 3, 2000) (dismissing claim alleging that defendants conspired to cause the state court to violate the plaintiff's constitutional rights because it essentially was "an indirect way of again saying the state court's decisions were wrong").  Further, treating the allegations as true for purposes of this motion, Plaintiff should have sought relief in a timely appeal, and not, as here, in a prohibited lawsuit in federal district court to declare a judgment void.  Rooker, 263 U.S. at 415 ("if the decision [of the state court] was wrong, that [does] not make the judgment void, but merely [leaves] it open to reversal or modification in an appropriate and timely appellate proceeding.").

Fourth, and last, Plaintiff explicitly requests that this Court review and reject the state court judgments by asking this Court to enjoin the collection of Income Withholding Orders and other collection efforts, vacate and declare null and void the support orders issued in the Plaintiff's state court custody and divorce case, and return all payments already collected.  See Dkt. No. 1 at p. 16.  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment."  Tyler, 914 F.3d at 50 (quoting Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir. 1999)).

Therefore, because each of the claims discussed are barred by the Rooker-Feldman doctrine, Plaintiff has failed to show a likelihood of success on the merits as to these claims.

    ii.    Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution is a "withdrawal of jurisdiction [that] effectively confers [on the States] an immunity from suit." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993). It is recognized as a bar to suits in federal courts against a State, its departments, agencies, and officials acting in their official capacities, unless the State has consented to suit, or Congress has overridden the State's immunity. See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hudson Sav. Bank v. Austin, 479 F.3d 102, 105-06 (1st Cir. 2007).

In narrow circumstances, the Ex parte Young exception to Eleventh Amendment immunity permits a federal court to enjoin a state official acting in his or her official capacity from violating federal law. See Ex parte Young, 209 U.S. 123, 159-60 (1908); see also Virginia Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254-55 (2011). This doctrine "rests on the premise . . . that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." Stewart, 563 U.S. at 255. The Ex parte Young exception to Eleventh Amendment immunity is "narrow" and "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, . . . and has no application in suits against the States and their agencies." Puerto Rico Aqueduct & Sewer Auth., 506 U.S. at 146.

Here, the Eleventh Amendment bars this Court from exercising jurisdiction over Plaintiff's claims against all Defendants for past conduct. Plaintiff has not identified, nor can the

Court discern, any claim for relief against these Defendants for which the Commonwealth of Massachusetts has waived its immunity or Congress has overridden it.  The Ex parte Young doctrine does not apply to Plaintiff's claims that Defendants violated his constitutional rights in the past by previously failing to respond to interrogatories or other filings, signing Income Withholding Orders, and issuing judgments adverse to Plaintiff.  Such claims seek relief for past conduct and damages.

Plaintiff does seek prospective injunctive relief and requests that this Court enjoin the future collection of child support payments.  The Defendants within the scope of this relief are the Probate and Family Court, CSS-DOR, and the Defendant Cristello in her official capacity.  However, the Ex parte Young exception does not apply to state agencies, which includes the Probate and Family Court and CSS-DOR.  This leaves only Plaintiff's claims against Defendant Cristello in her official capacity, which, as previously discussed, are barred by the Rooker-Feldman doctrine.[6]

    iii.    Judicial and Quasi-Judicial Immunity

Claims against the Registry Defendants are barred by quasi-judicial immunity.  Plaintiff's claims that the individual Registry Defendants violated his constitutional rights by not docketing filings or obscuring parts of the docket is barred by quasi-judicial immunity, which is afforded to court employees for actions taken that are "an integral part of the judicial process."  McNeil v. State of Massachusetts, No. 13-14370, 2014 WL 7404561, at *3 (D. Mass. Dec. 30, 2014);

---

[6] In addition, insofar as Plaintiff seeks injunctive relief concerning the execution of future Income Withholding Orders, this claim may be moot.  Plaintiff's divorce agreement indicates that two of Plaintiff's four children, who are over the age of 23, are emancipated and Plaintiff's two younger children (currently 21 and 22 years old) may similarly be emancipated.  The Judgment of Divorce requires that emancipation occur by the time each child reaches the age of 23 or earns a bachelor's degree.  See Judgment of Divorce Nisi, Van Etten v. Van Etten, WO07D1562DV1 (Mass. Prob. & Fam. Ct. Jan. 22, 2008).  And any of Plaintiff's children may have become emancipated upon reaching the age of 18 if the child did not enroll in an accredited post-secondary program on a full-time basis.  Id.

11

Andre v. Moriarty, No. 11-40009, 2011 WL 1456773, at *7 (D. Mass. Apr. 4, 2011).  Plaintiff's claims against the Registry Defendants appear to involve the exercise of these employees' discretionary functions and conduct that is an integral part of the judicial process—in particular docketing party filings; accordingly, quasi-judicial immunity bars such claims.  Cline v. Burke, 682 F. Supp. 3d 125, 132 (D. Mass. 2023) ("the doctrine of judicial immunity [] include[s] certain 'quasi-judicial' officers who are involved in an integral part of the judicial process and thus must be able to act freely with the threat of a lawsuit.  The doctrine applies to court clerks performing their duties . . .") (citations omitted).

Apart from the fact that claims against the Judiciary Defendants are barred by Rooker-Feldman, they are also barred by judicial immunity.  Under judicial immunity, judges are "exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law."  Id. at 131 (internal quotations and citation omitted).  Here, Plaintiff's claims attack the decisions of Massachusetts state court judges made in the course of their duties as judicial officers.

Accordingly, judicial and quasi-judicial immunity acts as an independent bar to Plaintiff's district court suit.

    iv.    Failure to State a Claim

The complaint does not state a claim against Defendant Denham in his individual capacity.  Plaintiff alleges Denham violated his rights by failing or refusing to answer interrogatories and Plaintiff's other filings, including mistake of facts, proof of debt, and notice of no contract (Counts VI, VII).  Plaintiff brings these counts pursuant to 18 U.S.C. §§ 241, 242, which are criminal statutes.  These criminal statutes do not provide a private right of action and Plaintiff is without authority to prosecute them.  Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989)

("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 (the criminal analogue of 42 U.S.C. § 1983).") (parenthetical in original).  And, even construing Plaintiff's claims against Denham as brought pursuant to 42 U.S.C. § 1985 (Conspiracy to Interfere with Civil Rights), Plaintiff fails to state a claim because each subsection of section 1985 expressly requires "two or more persons" to conspire, and Plaintiff alleges actions solely conducted by Denham.  Rolon v. Rafael Rosario & Assocs., Inc., 450 F. Supp. 2d 153, 165 (D.P.R. 2006).

The Court finds that Plaintiff has failed to demonstrate a likelihood of success on the merits as to any of the claims alleged in the complaint.  Although the Court need not consider the additional preliminary injunction factors, LeBeau v. Spirito, 703 F.2d 639, 645 (1st Cir. 1983), for purposes of this Report and Recommendation, the Court will briefly address them.

B.  Remaining Preliminary Injunction Factors

To establish that a party is entitled to a preliminary injunction he must also "show that ongoing or future irreparable injury is likely in the absence of an injunction." Rohm & Haas Elec. Materials LLC, 759 F. Supp. 2d at 126.  Plaintiff claims that he will experience irreparable financial harm if this Court does not issue a preliminary injunction prohibiting Defendants from implementing Income Withholding Orders and other collection efforts.  Dkt. No. 18 at ¶ 2.  Thus, the irreparable harm Plaintiff claims he will experience constitutes economic damages, which "can be remedied by compensatory awards, and thus do not rise to the level of being irreparable." Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009).  Because Plaintiff's only allegation of irreparable harm is economic, he has not established a significant risk of irreparable harm warranting a preliminary injunction in his favor.

The Court considers the final two factors, balance of hardships and public interest, together when the government is the opposing party. Does 1-6 v. Mills, 16 F.4th 20, 37 (1st Cir. 2021). The balance of hardships and public interest weigh against granting a preliminary injunction because Plaintiff has not established a substantial likelihood of success on the merits nor demonstrated any irreparable injury, and granting Plaintiff's request for a preliminary injunction would impose a significant financial hardship on third parties—notably Plaintiff's unemancipated children, who, the Probate and Family Court determined, are entitled to Plaintiff's financial support, see M.G.L. c. 208 § 28—and would impede CSS-DOR's efforts to carry out an order of the state court. Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec., 108 F.4th 194, 205-06 (3rd Cir. 2024).

IV.    CONCLUSION

For the reasons stated above, I RECOMMEND that the First Motion for Preliminary Injunction and the Emergency Motion to Stay Income Withholding Order be DENIED.[7]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[7] The parties are hereby advised that, under the provisions of Fed.R.Civ.P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir.1988); United States v. Valencia–Copete, 792 F.2d 4, 6 (1st Cir.1986); United States v. Vega, 678 F.2d 376, 378–79 (1st Cir.1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604–05 (1st Cir.1980); see also Thomas v. Arn, 474 U.S. 140, 154–55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.