## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **GREGORY J. VAN ETTEN** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **4:24-40113-MRG** |
| **STEPHANIE K. FATTMAN, ET AL.,** | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

### October 29, 2025

**Hennessy, M.J.**

This case is before the Court on Defendants' Motion to Dismiss and in Opposition to Plaintiff's Motion for Relief from Judgment. [Dkt. Nos. 91, 92]. Plaintiff, Gregory Alvin James Van Etten, opposes Defendants' Motion to Dismiss. [Dkt. No. 114]. On August 19, 2025, this case was referred to me for full pretrial dispositive motions. [Dkt. No. 106]. For the reasons stated herein, I RECOMMEND Defendants' Motion to dismiss be GRANTED.

I.    BACKGROUND

Van Etten initiated this matter pro se, invoking 42 U.S.C. §§ 1983 and 1985 and alleging that Defendants violated his constitutional rights through conduct and various proceedings that occurred in the Worcester Probate and Family Court, Superior Court, and Supreme Judicial Court ("SJC"), and through the collection of his wages pursuant to Income Withholding Orders. [Dkt. No. 1 at ¶¶ 12-41]. Van Etten names the following Defendants in the Complaint: the Worcester Probate and Family Court, the Massachusetts Child Support Services Department of Revenue ("CSS-DOR"), Probate and Family Court Associate Justice Jennifer Melia, Superior

1

Court Associate Justice Daniel M. Wrenn, SJC Associate Justice Serge Georges Jr. ("Judiciary Defendants"), Register of Probate Stephanie K. Fattman, Register of Probate Ashley Stewart, Assistant Register Megan Brown, Assistant Register Angelina Consolmagno ("individual Registry Defendants"), CSS-DOR Deputy Commissioner Michele Cristello, and Counsel for CSS-DOR Michael S. Denham ("individual CSS-DOR Defendants"). See id. at p. 1-3.

The facts presented in the Complaint date back to divorce proceedings Van Etten's ex-wife brought in 2007 in the Worcester Probate and Family Court. Id. at ¶ 12. In 2008 the Probate and Family Court issued a judgment of divorce. Van Etten v. Van Etten, No. WO0D1562DV1 (Mass. Prob. & Fam. Ct.).[1] Van Etten was ordered to pay child support, which was calculated based on his income from his previous occupation, although Van Etten had since left such job to become a Pastor. [Dkt. No. 1 at ¶¶ 14-17]. Van Etten later declared bankruptcy due to the costs of child support and two households, which resulted in him losing his home and car. Id. at ¶ 18. Van Etten claims he was under duress as a result of the divorce proceedings and that the support agreement was induced by fraud. Id. at ¶ 20.

Van Etten also claims that until sometime in 2023, he was unable to view some docket entries in the divorce case, including entries concerning service of process. Id. at ¶ 23. Van Etten asserts that upon accessing those entries, he discovered that the 2007 court-authorized alternate service by publication and mailing was improper. Id. at ¶¶ 21-22, 34. As a result, he now argues that he was not afforded due process, and therefore the Probate and Family Court's support orders must be declared null and void. Id.

---

[1] This Court can take judicial notice of state court records in related proceedings. Wiener v. MIB Grp., Inc., 86 F.4th 76, 81 n.3 (1st Cir. 2023). The court issued a Judgment of Modification on June 25, 2009, reducing Van Etten's child support obligation. Van Etten v. Van Etten, No. WO0D1562DV1 (Mass. Prob & Fam. Ct.). Van Etten sought to modify the judgment in 2010 and again in 2014 and the court dismissed both motions. Id.

The Complaint also alleges that in 2023 and 2024 the courts and their officers violated Van Etten's rights when Van Etten filed or attempted to file documents and motions in the Probate and Family, Superior, and Supreme Judicial Courts, including: a notice of no contract, interrogatories, a motion for an injunction, and two petitions for a writ of habeas corpus.  Id. at ¶¶ 24-25, 27-30, 32-33, 36-39.  The motions and petitions were denied; the filings were rejected or not answered.  Id.  Van Etten also directed several filings to CSS-DOR and the individual CSS-DOR Defendants, to which he did not receive responses.  See id. at ¶¶ 24-26, 31, 35.

The Complaint seeks to permanently enjoin any collection efforts via Income Withholding Orders or otherwise, a declaration that all support orders are null and void, return of prior payments "collected by fraud," and relief from financial losses "caused by" and "due to" Defendants' conduct and orders.  Id. at p. 16.

On September 23, 2024, Van Etten filed a First Motion for Preliminary Injunction to prohibit Defendants from enforcing Income Withholding Orders and other collection actions during the pendency of this litigation.  [Dkt. No. 18 at p. 1].  Van Etten's Emergency Motion—filed two weeks after the First Motion for Preliminary Injunction was filed, and just six days after this Court granted Defendants' Motion for Extension of Time to Respond to the Complaint and Motion for Preliminary Injunction—requested the same relief as stated in the Motion for Preliminary Injunction: "to stay income withholding order pending court hearing and ruling on the complaint."  [Dkt. No. 31 at p. 1].  The Court denied both Van Etten's Motion for Preliminary Injunction and his Emergency Motion to Stay Income Withholding Order, in large part because the Rooker-Feldman doctrine bars his claims.  [Dkt. No. 51].  Van Etten promptly appealed this denial to the First Circuit, which affirmed the District Court's denial of relief. [Dkt. Nos. 55, 75].

On August 1, 2025, Van Etten filed an Emergency Motion for Emergency Relief from Judgment Under Rule 60(b)(4) Due to Void Orders and Continuing Irreparable Injury. [Dkt. No. 79]. He subsequently filed a motion on August 4, 2025, asking the Court to promptly rule on his August 1 motion for relief from judgment, [Dkt. No. 82], and, after Defendants filed their Motion to Dismiss on August 13, 2025, [Dkt. No. 91], Van Etten filed a motion asking the Court to consider his motion seeking relief from judgment before or contemporaneously with Defendants' Motion to Dismiss. [Dkt. No. 93]. Van Etten filed another motion asking the Court to issue a prompt ruling on his Rule 60(b)(4) motion on August 21, 2025. [Dkt. No. 108]. On August 26, 2025, I issued a Report and Recommendation ("R&R"), recommending that the Court deny Van Etten's Emergency Motion for Rule 60 relief (Dkt. No. 79) and deny the motions at Dockets # 82, 93, and 108 as moot. [Dkt. No. 116]. I also ordered that, other than filing objections to my R&R, Van Etten was to cease further filings until I issued an R&R on the pending motion to dismiss, noting that in the past four months, he had docketed 30 filings. Id. Van Etten's objection to my R&R, and the Court's ruling thereon are pending. [Dkt. No. 117].

Van Etten filed an Amended Complaint on September 5, 2025. [Dkt. No. 120]. Defendants responded with a Motion to Strike Amended Complaint on September 19, 2025. [Dkt. No. 121]. Defendants also filed a Motion for Extension of Time to November 15, 2025, to File Response/Reply as to Amended Complaint to which Van Etten has filed an opposition. [Dkt. Nos. 124, 126]. Van Etten has filed a Motion to File Objections to Defendants' Motion to Strike and for Sanctions. [Dkt. No. 125]. On October 17, ignoring the Court's order on further filings, [Dkt. No. 116], Van Etten filed an Emergency Motion for a Hearing, and for other relief. [Dkt. No. 132].

This Report and Recommendation addresses Defendants' Motion to Dismiss, [Dkt. No. 91], and Van Etten's filing of an Amended Complaint. [Dkt. No. 120]. For the reasons stated below, I recommend that the Court GRANT Defendants' Motion to Dismiss, [Dkt. No. 91], in its entirety. I also DISALLOW Van Etten's Amended Complaint, [Dkt. No. 120], as futile.

II.    THE JURISDICTIONAL STANDARD

Defendants challenge Van Etten's Complaint under Federal Rule of Civil Procedure 12(b)(1) arguing this Court lacks subject matter jurisdiction over Van Etten's claims. [Dkt. No. 92 at p. 2].[2]

The plaintiff has the burden of proving subject matter jurisdiction, and "[w]hen a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). The court may also consider "whatever evidence has been submitted, such as the depositions and exhibits[.]" Id. (quoting Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996)). However, "the pleading standard for satisfying the factual predicates for proving jurisdiction is the same as applies under Rule 12(b)(6)—that is, the plaintiff[] must 'state a claim that is plausible on its face.'" Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017) (quoting Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healy, 844 F.3d 318, 326-27 (1st Cir. 2016)). Therefore, "an order granting a motion to dismiss at the pleading stage is appropriate only when the facts adumbrated in the plaintiff's complaint, taken at face value, fail to bring the case within the court's subject-matter jurisdiction." Id. (citation omitted).

---

[2] I address below Defendants' further arguments that, even if the Rooker-Feldman doctrine did not prohibit an exercise of subject matter jurisdiction over Van Etten's claims, the Younger abstention doctrine, the Eleventh Amendment, and absolute judicial immunity and quasi-judicial immunity bar any relief. [Dkt. No. 92 at p. 2].

III.    <u>APPLICATION</u>

    A.    <u>The Rooker-Feldman Doctrine</u>

Defendants move to dismiss, arguing that the <u>Rooker-Feldman</u> doctrine[3] bars this Court from exercising jurisdiction, thus warranting dismissal under Rule 12(b)(1).  [Dkt. No. 92 at p. 2]; Fed. R. Civ. P. 12(b)(1) (stating that a party may bring a motion to defend against claims where the court lacks subject matter jurisdiction).  "Under the <u>Rooker-Feldman</u> doctrine, federal district courts lack jurisdiction over 'federal complaints . . . [that] essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments.'"  <u>Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.</u>, 410 F.3d 17, 20 (1st Cir. 2005) (alteration in original) (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 283-84 (2005)).  This is because, as the Supreme Court articulated in <u>Rooker v. Fidelity Trust Co.</u>,

> Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character.  To do so would be an exercise of appellate jurisdiction.  The jurisdiction possessed by the District Courts is strictly original.

263 U.S. 413, 415-16 (1923) (internal citations omitted).  Put another way, "the proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal of the highest state court's final judgment."  <u>Davison v. Gov't of P.R.-P.R. Firefighters Corps.</u>, 471 F.3d 220, 223 (1st Cir. 2006).

<u>Rooker-Feldman</u> "applies only when 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'"  <u>In re American Bridge Products</u>, 599 F.3d 1, 4 (1st Cir. 2010) (quoting <u>Exxon Mobil Corp.</u>, 544 U.S. at 291).  Application of this

---

[3]  "<u>Rooker-Feldman</u> doctrine" is a shorthand reference to the Supreme Court's interpretation of 28 U.S.C. § 1257 in <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923) and <u>District of Columbia Ct. of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

standard requires dismissal of Van Etten's Complaint for a lack of jurisdiction under the Rooker-Feldman doctrine.

First, Van Etten meets the definition of a state court loser: the Probate and Family Court granted his ex-wife's suit for divorce and ordered Van Etten to pay child support, and all but one of his motions to modify the support order have been denied, as have his efforts since to collaterally attack the judgment and the Income Withholding Orders of the Probate and Family Court.  See Efreom v. McKee, 46 F.4th 9, 17 (1st Cir. 2022) (explaining that litigants seeking to void state court rulings and orders pursuant to them on the grounds that those orders violate their federal rights are "state-court losers" for Rooker-Feldman purposes).  Indeed, each judgment referenced in the Complaint concerns a state court decision adverse to Van Etten.  See [Dkt. No. 1 at ¶¶ 30, 36-39]; [Dkt. No. 32, Ex. 1 at p. 5-6].

Second, Van Etten commenced this action after the state court judgments were entered and those proceedings had ended.  Van Etten filed this suit on September 5, 2024.  [Dkt. No. 1]. The relevant orders of the Probate and Family Court issued on January 22, 2008 (the Judgment of Divorce), and June 16, 2009 (Judgment of Modification obligating Van Etten to make reduced weekly support payments through the DOR).  Van Etten v. Van Etten, WO07D1562DV1 (Mass. Prob. & Fam. Ct.).  Van Etten's Complaint also attacks judgments of the Superior Court and of a single justice of the SJC issued in 2023 and 2024 respectively.  [Dkt. No. 1 at ¶¶ 29, 30, 32-39]. Van Etten's time to appeal these judgments has lapsed.  See M.G.L. c. 215 § 9; SJC Rule 2:21(1); Mass. R. App. P. 4(a).[4]  When "a lower state court issues a judgment and the losing

---

[4] There is no entry on the Probate and Family Court docket indicating Van Etten appealed any of that court's judgments.  See Van Etten v. Van Etten, WO07D1562DV1 (Mass. Prob. & Fam. Ct.).  A Superior Court docket entry notes Van Etten did not timely docket an appeal.  See In re Van Etten, 2485CV00026 (Mass. Sup. Ct.). And no notice of appeal is listed on the SJC docket from Van Etten's first habeas petition, Child Support Enforcement Division Mass. Department of Revenue v. Van Etten, SJ-2023-0477 (Mass.), which was transferred to the Superior Court.  Nor is there any record that Van Etten filed an appeal from the Superior Court's judgment.  See Van Etten v. Child Support Enf't Div. Mass. Dep't of Revenue, 2384CV00390 (Mass. Sup. Ct.).  And there is no indication Van

party allows the time for appeal to expire, the proceedings have ended[]" for purposes of Rooker-Feldman. Federación de Maestros de P.R., 410 F.3d at 24.

Third, the state court judgments allegedly caused the injuries of which Van Etten complains. I address this element by category of defendant.

**Probate and Family Court and Judiciary Defendants.** Van Etten's claims against the Probate and Family Court and Judiciary Defendants (Counts 1, 2, 4, and 8) allege violations of Van Etten's constitutional rights and claim that state court judgments caused these injuries, specifically that: the Probate and Family Court violated Van Etten's due process rights by authorizing and accepting insufficient alternative service by publication (Count 1), Judge Melia's denial of his motion to vacate a void judgment infringed his due process rights (Count 1), the Family and Probate Court denied his right to a jury trial under the Seventh Amendment by issuing support orders absent a jury trial (Count 2),[5] the Family and Probate Court forced Van Etten to work a corporate job to satisfy the child support orders (Count 4), and Justices Wrenn and Georges denied Van Etten free access to the courts by dismissing his filings or denying the relief requested (Count 8). Each of these counts plainly attributes Van Etten's injuries to specific judgments of the Probate and Family Court, and the Judiciary Defendants.[6] See Bauersachs v. Gaziano, No. 21-cv-11866, 2022 WL 4111911, at *4 (D. Mass. Sept. 8, 2022), aff'd No. 22-

---

Etten appealed the denial of his second habeas petition. See Child Support Enf't Div. Mass. Dep't of Revenue v. Van Etten, SJ-2024-0115 (Mass).

[5] Here and in other parts of his filings, Mr. Van Etten erroneously cites to the Sixth Amendment which protects the trial right of criminal defendants and is plainly inapplicable.

[6] The fact that Van Etten challenges the Probate and Family Court's jurisdiction over him does not change this Court's application of the Rooker-Feldman doctrine. Rooker Feldman's application is not limited to instances where the challenges raised in federal court are identical to those raised in the state court proceedings, Tyler, 914 F.3d at 51 (quoting Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 66 (1st Cir. 2018) ("Put simply, a federal court's application of the Rooker-Feldman doctrine is not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit.")). Any challenge to the Probate and Family Court's jurisdiction over Van Etten should have been raised on appeal from the Probate and Family Court orders. Davison, 471 F.3d at 223.

1772, 2023 WL 7001673 (1st Cir. May 15, 2023) (finding that claims were barred by <u>Rooker-Feldman</u> where plaintiff's complaint discussed state court proceedings at length and repeatedly alleged harms attributable to state court decisions).

      **CSS-DOR & Individual CSS-DOR Defendants.**  Van Etten alleges that CSS-DOR and Defendant Cristello violated his Seventh Amendment jury trial right because CSS-DOR issued Income Withholding Orders and bank garnishments of Van Etten's wages without the due process of a jury trial, and that these orders lacked a judge's signature or a court seal and forced Van Etten to work in a corporate environment to pay child support (Counts 2, 4 (CSS-DOR) and Counts 1, 2, 5, 10 (Cristello)).  Like the claims against the Probate and Family Court and the Judiciary Defendants, these claims depend on the 2008 Judgment of Divorce and 2009 Judgment of Modification and Income Withholding Orders which explicitly order Van Etten to pay child support through the DOR.  <u>Van Etten v. Van Etten</u>, WO07D1562DV1 (Mass. Prob. & Fam. Ct.); <u>see</u> <u>Morales v. Morales</u>, 464 Mass. 507, 510 n. 5 (2013) (DOR administers child support enforcement services as required by law).  Therefore, Van Etten's allegations that the Income Withholding Orders issued by CSS-DOR and signed by Cristello violated his constitutional rights seek "an end-run around a final state-court judgment."  <u>Klimowicz</u>, 907 F.3d at 66. <u>Rooker-Feldman</u> prohibits such a maneuver because it effectively asks this Court to exercise appellate jurisdiction over the state proceedings and prohibit CSS-DOR from collecting payments which, in turn, would nullify the state court child support order.  <u>Id.</u>; <u>see also</u> <u>Mandel v. Town of Orleans</u>, 326 F.3d 267, 272 (1st Cir. 2003) (district court injunction enjoining state police from assisting parent in obtaining custody of children in compliance with state court order violated <u>Rooker-Feldman</u> because it frustrated state court custody order).

**All Defendants.** Van Etten also alleges in Count 3 that "[a]ll Defendants conspired to block, interfere with, and intimidate [Plaintiff] into submitting to unlawful orders." [Dkt. No. 1 at ¶ 51]. The <u>Rooker-Feldman</u> doctrine bars a claim that, as here, "alleges in general, conclusory terms that the [defendants] conspired to cause the state court to reach a wrong result." <u>O'Callaghan v. Shirazi</u>, No. 00-1148, 2000 WL 560172, at *1 (1st Cir. May 3, 2000) (dismissing claim alleging that defendants conspired to cause the state court to violate the plaintiff's constitutional rights because it essentially was "an indirect way of again saying the state court's decisions were wrong").[7]

In response to <u>Rooker-Feldman</u>, Van Etten contends that his claims for relief do not ask this Court to directly review or upset the judgment of the state courts but rather only "challenge[] the executive enforcement acts carried out under color of state law[.]" [Dkt. No. 114, at p. 2-3]. This contention is a distinction without a difference. The reality is that Van Etten asks this Court to vacate and declare null and void the support orders issued in Van Etten's state court custody and divorce case. Indeed, the relief he seeks--that the Court enjoin wage garnishment and collection pursuant to the Income Withholding Orders, and return all payments already collected--depends on this Court exercising appellate jurisdiction and declaring the actions of the state court void or in error. <u>See</u> [Dkt. No. 1 at p. 16]. Put another way, in order for this Court to grant

---

[7] In addition to the bar <u>Rooker-Feldman</u> raises, the conspiracy claim would fail under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. A conspiracy is defined as a "combination of two or more persons acting in concert to commit an unlawful act." <u>Alston v. Spiegel</u>, 988 F.3d 564, 577 (1st Cir. 2021) (quoting <u>Earle v. Benoit</u>, 850 F.2d 836, 844 (1st Cir. 1988)). To sufficiently plead a civil rights conspiracy, a plaintiff "must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of h[is] civil rights." <u>Id.</u> at 577-78 (quoting <u>Parker v. Landry</u>, 935 F.3d 9, 18 (1st Cir. 2019)). Bald claims that defendants "conspired" require supporting factual allegations. <u>Id.</u> at 578. Van Etten alleges simply that "All Defendants conspired to block, interfere with, and intimidate defendant into submitting to unlawful orders." [Dkt. No. 1, at p. 12-13]. This is insufficient to meet the requirement that a civil conspiracy claim plead facts indicating an agreement among the conspirators. <u>Alston</u>, 988 F.3d at 577-78. Even where there is no direct evidence of a conspiracy, plaintiffs are required to "plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." <u>Id.</u> at 578. Van Etten fails even if this circumstantial standard is applied, and thus I recommend dismissal of Count 3.

Van Etten the relief he seeks, it would have to conclude that the state court was wrong in its judgment that alternative service of process was appropriate for an exercise of jurisdiction over him.  Thus, it is clear that Van Etten is seeking to use the District Court as an appellate forum to reverse the findings and orders from his state court proceedings. . .  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment."  Tyler, 914 F.3d at 50 (quoting Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir. 1999)); Klimowicz, 907 F.3d at 66 ("the critical datum is whether the plaintiff's suit is, in effect, an end-run around a final state-court judgment.").

In opposing Defendants' Motion to Dismiss, Van Etten also argues that "since there was no valid judgment due to lack of personal jurisdiction, the Rooker-Feldman doctrine does not bar this federal action as there is no final state court decision subject to review."  [Dkt. No. 43, at p. 8].  Remarkably, for this critical assertion – it is the very cornerstone of Van Etten's federal suit – Van Etten cites no legal authority.  Moreover, the existing case law I could find squarely contradicts it.  Posed with the question, the Sixth, Seventh, Eighth, Ninth, and Tenth Circuits have all expressly rejected such an exception, and, in some cases, on facts very similar to those presented by Van Etten.  See Rouse v. Nessel, 2022 WL 13631916, at *2 (6th Cir. July 11, 2022) (no exception to application of  Rooker-Feldman where plaintiff argued child support orders were void because the state court which issued them lacked personal jurisdiction over plaintiff); see also Schmitt v. Schmitt, 324 F.3d 484, 487 (7th Cir. 2003) (rejecting argument that there is a "void ab initio" exception to Rooker-Feldman where the state court allegedly lacked jurisdiction in underlying divorce proceedings); see also Skit Intern., Ltd. v. DAC Techs. Of Arkansas, Inc., 487 F.3d 1154, 1156-58 (8th Cir. 2007) (affirming dismissal under Rooker-Feldman in case

where plaintiff sought to set aside state court judgment as "void" for lack of service of process and lack of personal jurisdiction); Williams v. Rudder, 178 F.3d 1301, 1999 WL 311348, at *1 (9th Cir. May 14, 1999) (stating that "Because federal district courts lack appellate jurisdiction over state court decisions, even where the claim is that the state court lacked personal jurisdiction, the district court properly dismissed this action under the *Rooker-Feldman* doctrine."); Eisenhart v. Eagle Cty. Sheriff's Office, 2024 WL 3594357, at *2 (10th Cir. July 31, 2024) (affirming that Rooker-Feldman bars a claim where plaintiff asks to review state court judgment for lack of personal jurisdiction).

Thus, for example, in Schmitt v. Schmitt, the Illinois state court authorized alternative service of process on Schmitt in a divorce proceeding. 324 F.3d at 485. Schmitt challenged service of process, and the state court denied his challenge and ordered him to pay his ex-wife support and attorney's fees. Id. Unlike Van Etten, Schmitt actually pursued an interlocutory appeal, claiming that the trial court's support order was void because the method of service violated his due process rights. Id. The appellate court rejected his claim. Id. Schmitt then filed a § 1983 claim in federal court, which the district court dismissed for lack of subject matter jurisdiction, citing the Rooker-Feldman doctrine. Id. The district court also sanctioned Schmitt and his attorneys under Federal Rule of Civil Procedure 11. Id. On appeal to the Seventh Circuit, Schmitt urged that the court find the same exception which Van Etten presses here, one that would allow federal courts to review state court judgments where those judgments were allegedly defective due to a lack of personal jurisdiction over the defendant. Id. at 487. The Seventh Circuit refused:

> [T]he Illinois state courts were competent to determine their own jurisdictional boundaries, so there is no need for the federal courts to intervene. If a state court had violated constitutional jurisdictional limits, Mr. Schmitt could have brought that up with the Supreme Court after exhausting his state court remedies.

In sum, Mr. Schmitt has brought the precise sort of claim *Rooker–Feldman* eliminates. And that is so clear that, in addition to AFFIRMING the district court's judgment, we declare this appeal to be frivolous, and we direct the plaintiffs to show cause within 14 days why they should not be sanctioned under our Rule 38.

Id. at 487-88 (all caps in original).

In doing so, the Seventh Circuit has described the Rooker-Feldman doctrine "[a]t its core, … [as] a recognition of the principle that the inferior federal courts generally do not have the power to exercise appellate review over state court decisions.'' Kamilewicz v. Bank of Boston Corp., 92 F.3d 506, 509 (7th Cir. 1996). Here, I find that the prerequisites for application of Rooker-Feldman are easily satisfied, and the Court is without jurisdiction to hear this case. Accordingly, and for this reason alone, I recommend that the Court grant Defendants' Motion to Dismiss Van Etten's suit.

B.    Independent Grounds for Dismissal as to Each of Van Etten's Claims[8]

Apart from the Rooker-Feldman doctrine barring Van Etten's suit, Eleventh Amendment immunity protecting states from suit bars Van Etten's claims against the Probate Court and CSS-

---

[8] Were it applicable, the Younger abstention doctrine, which Defendants cite as an alternative ground for dismissal, would obtain the same result as Rooker-Feldman. "The *Younger* doctrine is based on principles of comity, and unless there are extraordinary circumstances, it instructs federal courts not to 'interfere with ongoing state-court litigation[.]'" Rossi v. Gemma, 489 F.3d 26, 34 (1st Cir. 2007) (quoting Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 31 (1st Cir. 2004) (emphasis added); see also Younger v. Harris, 401 U.S. 37, 46 (1971). Younger bars the exercise of federal jurisdiction "when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." Rossi, 489 F.3d at 34-35. The key difference between the Rooker-Feldman and Younger doctrines is that the former bars the exercise of federal jurisdiction in state cases that have ended while the latter bars the exercise of jurisdiction in ongoing state cases. Though I find that Van Etten's state court case has terminated because Van Etten's time to appeal has long since expired, [Dkt. No. 92 at p. 9-10]; Klimowicz, 907 F.3d at 65-66 (stating that where "the losing party allows the time for appeal to expire, then the state proceedings have ended.")—and Van Etten does not argue otherwise—insofar as it could be argued that the Probate and Family Court could reopen the case to rule on, for instance, a motion for modification, and hence that the state case could be resurrected for such purpose, I would still recommend dismissal under the Younger doctrine as I find that its three requirements have been met. M.G.L. c. 208 § 28; Younger, 401 U.S. at 46. In sum, regardless of whether Van Etten's state case is characterized as ended or ongoing, federal jurisdiction would not lie under Rooker-Feldman or Younger. Gray-Bey v. 42 U.S. Code 654(c), No. 20-cv-12042, 2021 WL 8323638 at *4 (D. Mass. Mar. 17, 2021) (similarly finding that either Rooker-Feldman or Younger applies to bar challenges to child support matters and issues surrounding enforcement). I make no further reference to the bar to an exercise of jurisdiction Younger abstention interposes, since I find that the state court proceedings have ended.

DOR, and for claims for damages and retrospective relief against all defendants sued in their official capacities.  U.S. Const. amend. XI.  For this independent reason these claims should be dismissed under Fed. R. Civ. P. 12(b)(1).

> 1.    Claims against the Probate Court, CSS-DOR, and all official capacity claims

The Eleventh Amendment to the United States Constitution states "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  There is no question that the Supreme Court has interpreted this Amendment as barring "federal suits by citizens against the state or state agencies…"  Brait Builders Corp. v. Massachusetts, Div. of Capital Asset Mgmt., 644 F.3d 5, 11 (1st Cir. 2011) (quoting O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000)).  Accordingly, "[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it,…a State cannot be sued directly in its own name regardless of the relief sought."  Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985).  "To the extent that [state employees] are sued in their "official capacities, they stand in the shoes of the state and enjoy the same immunity as does the [state]."  Coggeshall v. Massachusetts Bd. of Registration of Psychologists, 604 F.3d 658, 662 (1st Cir. 2010).  "Congress has not abrogated, and Massachusetts has not waived, its Eleventh Amendment immunity for civil-rights claims brought under 42 U.S.C. § 1983 or § 1985."  Cline v. Burke, 682 F.Supp.3d 125, 131 (D. Mass. 2023).  This Court has clarified that the states and their agencies are not "persons" subject to suit under § 1983 for damages.  Id. (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989)).  State officials sued in their official capacity also are not "persons" for purposes of § 1983.  Id. (citing Hafer v. Melo, 502 U.S. 21, 23 (1991)).

14

Because the Probate Court and CSS-DOR are each state agencies, see M.G.L. c. 119A, §

1 (CSS-DOR); M.G.L. c. 211B, § 1 (Probate Court); M.G.L. c. 215, § 1 (Probate Court and

Register), the claims against them are barred by the Eleventh Amendment and thus must be

dismissed under Federal Rule of Civil Procedure 12(b)(1) as this Court lacks jurisdiction over

such claims.  Van Etten's claims against individual defendants in their official capacities are also

barred as they are all state officials as well and suits against them for damages cannot be

maintained.  Cline, 682 F.Supp.3d at 131 (dismissing claims against many of the same individual

defendants named by Van Etten in this Complaint).  To the extent Van Etten seeks retrospective

relief, as explained above, this Court lacks jurisdiction to frustrate the rulings of state courts

under Rooker-Feldman.  Federación de Maestros de P.R, 410 F.3d at 20.

The Ex Parte Young exception to state immunity under the Eleventh Amendment allows

a party to bring a suit against state officials in their official capacity if that party is seeking

*prospective* equitable relief enjoining future violations of federal law.  Tyler, 981 F.Supp.2d at

95 (citing Ex Parte Young, 209 U.S. 123, 159-60 (1908)).  However, the only claim for

prospective relief brought by Van Etten is to prohibit CSS-DOR from further collecting child

support payments.  [Dkt. No. 92 at 16 n. 11] (citing [Dkt. No. 1, ¶ 72(a)]).  As already discussed,

that specific relief cannot be granted by this Court because of the limitations on federal district

court jurisdiction imposed by Rooker-Feldman.  Accordingly, Van Etten's application to enjoin

child support payments must be similarly dismissed for its failure to state a claim upon which

relief can be granted.  Fed. R. Civ. P. 12(b)(1).

2.    Individual capacity claims

Even if this Court were not divested of jurisdiction by the Rooker-Feldman doctrine or

the Eleventh Amendment, each of Van Etten's claims against the individual defendants sued in

their individual capacities would fail on its own as each is barred either by judicial immunity or by a failure to state a claim upon which relief can be granted.

> a)    The claims against the judiciary defendants are barred by absolute judicial immunity.

Van Etten's claims against the Judiciary Defendants (Justices Melia, Wrenn, and Georges), see [Dkt. No. 1 at ¶¶ 44, 63, 64], are barred by absolute judicial immunity. "There is no question that [judges are] protected by absolute immunity from civil liability for any normal and routine judicial act." See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)). Absolute judicial immunity applies to judicial functions unless the "judge is carrying out an activity that is not adjudicatory." Zenon v. Guzman, 924 F.3d 611, 617 (D. Mass. 2019). Where it applies, absolute judicial immunity "means not just immunity from damages, but immunity from suit altogether," id. at n. 10, and it applies even where a judge's actions "are malicious, corrupt, mistaken, or taken in bad faith" as long as the act "was one normally performed by a judge" and the judge was acting "in his or her judicial capacity." Id. at 616.

An examination of the record shows that the predicate for Van Etten's claims against the Judiciary Defendants is conduct that was judicial in nature and handled in their judicial capacities regarding the Probate and Family Court matter or a collateral attack on child-support orders. See [Dkt. No. 1, ¶¶ 44, 63, 64]. Paragraph 44 of Van Etten's Complaint states that he is bringing a claim for violation of his due process rights under the Fifth and Fourteenth Amendments against Judge Melia "for denying motion to vacate void judgment…" Id. at ¶ 44; Rodriguez v. Ulwick, No. 21-cv-10438, 2021 WL 2092921, at *2 (D. Mass. Apr. 14, 2021), aff'd, 2022 WL 17228795 (1st Cir. 15, 2022) (finding that judicial immunity applies to a judge's actions taken in relation to divorce and child custody proceedings). Similarly, the predicate for

Van Etten's claims against Justices Wrenn and Georges are rulings disposing of habeas petitions Van Etten filed.  [Dkt. 1, ¶ 32] (Judge Wrenn denying Van Etten's Petition for Writ of Habeas Corpus for failure to provide any financial information); [Dkt. 1, ¶ 33] (Judge Georges denying Petition for Writ of Habeas Corpus without a hearing as Van Etten was not a resident of the Commonwealth and thus was not entitled to such relief).  These denials of relief are also core judicial functions, and Van Etten does not suggest otherwise.  Cok, 876 F.2d at 2.

While it is true that absolute judicial immunity does not apply to actions taken without jurisdiction, which is what Van Etten alleges occurred in the Probate and Family Court, that is so only when those actions were "taken in the clear absence of all jurisdiction."  Id.  The Supreme Court has stated that the necessary inquiry for determining whether there was a "clear absence" of jurisdiction is "whether at the time [the judge] took the challenged action he had jurisdiction *over the subject matter* before him."  Guzmán-Rivera v. Lucena-Zabala, 642 F.3d 92, 99 (1st Cir. 2011) (quoting Stump, 435 U.S. at 356).  So long as the judge had jurisdiction over the subject matter before the court, she or he has absolute judicial immunity even for "the commission of grave procedural errors."  Id.  To be clear, Stump and Guzmán both suggest that it is a blatant lack of *subject matter jurisdiction* which can support an exception to absolute judicial immunity.  See Stump, 435 U.S. at 356; see also Guzmán, 642 F.3d at 99.[9]  Judge Melia, as an Associate

---

[9] This is consistent with the well-established principle that:

> Subject-matter jurisdiction … is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign…[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.

Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) (citing California v. LaRue, 409 U.S. 109 (1972); American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17–18 (1951)).  Fed. R. Civ. P. 12(h)(3) mandates that: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Similarly, an objection by one of the parties, or the court on its own, that a court lacks

Justice of the Probate and Family Court surely had jurisdiction over the subject matter in Van

Etten's divorce and child support proceedings.  M.G.L. c. 215, § 3 (granting probate courts

exclusive original jurisdiction over divorce proceedings); see also Sullivan v. Kelleher, 405 F.2d

486, 487 (1st Cir. 1968).

Additionally, the challenges that Van Etten raises to the Probate and Family Court's

jurisdiction over him are not based on a lack of subject matter jurisdiction—such a claim would

have failed had it been raised—but rather on an alleged lack of personal jurisdiction.  [Dkt. 1, at

¶¶ 7, 72(b)].  Personal jurisdiction is unlike subject matter jurisdiction.  It can be established in

one of two ways: either by proper service of process or "by the defendant's waiver of any defect

in the service of process."  Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21,

24-25 (1st Cir. 1992) (explaining that personal jurisdiction objections can be waived "by express

submission, conduct, or failure to assert the defense.").  "[U]nlike subject-matter jurisdiction,

which even an appellate court may review *sua sponte*, under Fed. R. Civ. P. 12(h), '[a] defense

of lack of jurisdiction over the person ... is waived' if not timely raised in the answer or a

responsive pleading."  Insurance Corp. of Ireland, Ltd., 456 U.S. at 704 (quoting Fed. R. Civ. P.

12(h)).  Similarly, the Appeals Court of Massachusetts has stated that "the defense of lack of

personal jurisdiction can be waived through nonassertion."  Colley v. Benson, Young & Downs

Ins. Agency, Inc., 42 Mass. App. Ct. 527, 532-34 (1997).  Far from challenging service of

process, Van Etten appeared and actively participated in the divorce proceedings, thus waiving

any challenge he might have brought to the Probate and Family Court's personal jurisdiction

over him.  [Dkt. 92, Ex. 1 at 3-4] (showing that Van Etten participated in proceedings before the

---

subject matter jurisdiction can be raised "at any stage in the litigation, even after trial and the entry of judgment."
Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1)).

probate court, including by filing an answer and counterclaim); see Precision Etchings

&Findings, Inc., 953 F.2d, at 25-26 (stating that conduct can constitute waiver of an objection for

lack of personal jurisdiction).

Accordingly, from all appearances, there was a lack of neither subject matter nor personal

jurisdiction in Van Etten's case in the Probate and Family Court, and certainly not a "clear

absence" of such jurisdiction, and the Judiciary Defendants' absolute judicial immunity is intact.

> b)   The claims against the Register Defendants are barred by quasi-judicial immunity.

Van Etten's claims against the Register Defendants (Fattman, Steward, Brown, and

Consolmagno), see [Dkt. 1, ¶¶ 66-69], though they are not against judges themselves and thus

are not barred by absolute judicial immunity, are barred by quasi-judicial immunity.  "The

doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that

are inextricably intertwined with the judicial function." Nystedt v. Nigro, 700 F.3d 25, 30 (1st

Cir. 2012).  The doctrine applies to protect court personnel from civil liability arising from

performance of "core clerical duties in support of the adjudication of cases." Powell v.

Commonwealth of Massachusetts, 2016 WL 7115887, at *7 (D. Mass. Sept 20, 2016) (collecting

cases where courts applied quasi-judicial immunity to court clerks, a court-appointed guardian

ad-litem and conservator in divorce proceeding, and a state receiver).  Further, as Nystedt

recognized, quasi-judicial immunity makes sense because "in its absence, [court personnel]

would become 'lightning rod[s] for harassing litigation aimed at judicial orders.'"  700 F.3d at

31.  The system cannot allow "disappointed litigants, blocked by the doctrine of absolute

immunity from suing the judge directly, [to] vent their wrath on clerks, court reporters, and other

judicial adjuncts." Cline, 682 F.Supp.3d at 132 (citing McNeil v. State of Mass., 2014 WL

7404561, at *3 (D. Mass. Dec. 30, 2014)).

Here, Van Etten claims the Register Defendants concealed certain portions of the Probate and Family Court docket and refused to docket and/or return certain mailings he submitted to the Register's office for filing in the Probate and Family Court action.  [Dkt. No. 1, ¶¶ 24-25, 27, 66-69].  There is no question that these functions are "inextricably intertwined" with performance of judicial functions.  Nystedt, 700 F.3d at 31.  Under Massachusetts law, maintenance of the Probate Court docket and acceptance of the Probate Court filings are duties of the Register.  See M.G.L. c. 215 § 37 (establishing the Register of the Probate Courts to keep a docket of all cases and matters within the court); see also M.G.L. c. 217 § 21 (stating that the Probate Register "may at any time receive and place on file complaints, petitions and applications to the probate court or the court of insolvency, and may issue orders of notice, summonses and citations in like manner and with like effect as if issued by the judge…").  This Court, as well as the SJC and the First Circuit, has recognized that duties such as those exercised by the Probate Register implicate "core clerical functions" that are integral to the judicial process, and thus quasi-judicial immunity protects such agents of the court engaged in and supporting the judicial function.  See, e.g., Powell, 2016 WL 7115887, at *7 (citing Nystedt, 700 F.3d at 30 (collecting cases)).  Indeed, this Court has previously dismissed claims nearly identical to Van Etten's on the ground that the court personnel were "being sued in connection with actions taken while performing tasks that are part of the judicial process."  Bowen v. Worcester Family and Probate Court, 2014 WL 5106419, at *2 (D. Mass. Oct. 9, 2014).   Because Van Etten fails to allege any facts that warrant a departure from this line of precedent, I recommend dismissing the claims against the Register Defendants on the independent ground of quasi-judicial immunity.

c)    <u>The Complaint fails to state a plausible claim for relief against the CSS-DOR individual defendants and thus those claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6).</u>[10]

I address separately the individual capacity claims against the CSS-DOR defendants, Cristello and Denham.  The claims against Cristello are based on her "signing income withholding orders."  [Dkt. No. 1, ¶¶ 45, 47, 55, 71 (Counts 1-2, 5, 10)].  Those against Denham are based on his "refusal to answer interrogatories" propounded to CSS-DOR in the 2023 Superior Court action, <u>id.</u>, ¶¶ 25, 57 (Count 6), and his "ignoring" certain documents that Van Etten mailed to CSS-DOR, <u>id.</u> ¶¶ 24, 26, 60 (Count 7).  While these claims are not barred by absolute judicial or quasi-judicial immunity (discussed above), they nevertheless fail to state a claim upon which relief can be granted and thus must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Under Rule 12(b)(6), a party can challenge a complaint on the ground that it fails "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief."  <u>Duke v. Community Health Connections, Inc.</u>, 355 F.Supp.3d 49, 54 (D. Mass. 2019) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  "In evaluating whether a plaintiff has met this burden, [the court] 'accept[s] the complaint's well-pleaded facts as true and indulge[s] all reasonable inferences in the plaintiff's favor.'"  <u>Borrás-Borrero v.</u>

---

[10] It is unclear from Van Etten's Complaint whether the claims discussed in this section are brought against Cristello and Denham in their individual or official capacities.  [Dkt. 1 at p. 11-15].  For purposes of this section, we treat them as though they were brought against them in their individual capacity because, as discussed above, were they brought against Cristello and Denham in their official capacities, they would be barred by the Eleventh Amendment.  <u>See</u> section III(B)(1).  Additionally, to the extent that some of the counts discussed in this section bring claims against defendants other than Cristello and Denham, those claims are barred by the Eleventh or absolute judicial immunity.  <u>See</u> section III(B)(1); III(B)(2)(b).

Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 33 (1st Cir. 2020) (quoting Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008)).  "When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court 'should not grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts.'" Theta Products, Inc. v. Zippo Mfg. Co., 81 F.Supp.2d 346, 348 (D.R.I. 1999) (quoting Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir. 1996)).  Dismissal is appropriate where the complaint fails to include "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory[.]"  Pitta v. Medieros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)).

Here, a number of pleading defects warrant dismissal under Rule 12(b)(6).  First, all counts 1, 2, 5, 6, 7, and 10 brought against Cristello and Denham (and some other Defendants) in their individual capacities allege violations of 18 U.S.C. §§ 241, 242 or § 1341 (Count 5).  [Dkt. No. 1 at p. 11-15].  United States Code Title 18 covers crimes and criminal procedure.  18 U.S.C. Because "[g]enerally, a private citizen has no authority to initiate a federal criminal prosecution," the claims must be dismissed for failure to state a claim under Rule 12(b)(6).  Cok, 876 F.2d at 2 (dismissing claims brought by civil plaintiff under 18 U.S.C. §§ 241, 242) (citing Keenan v. McGrath, 328 F.2d 610, 611 (1st Cir. 1964)); see also Turner v. Melia, No. 20-cv-40097, 2021 WL 11715616, at *3 (D. Mass. Jan 31, 2021) (dismissing private claim brought under 18 U.S.C. § 1341).

Second, Van Etten brings Count 2 against Defendant Cristello for violating his Sixth Amendment right to a trial by jury.  [Dkt. No. 1, at p. 12].  The Sixth Amendment trial right applies only "[i]n [] *criminal* prosecutions[.]"  U.S. Const. amend. VI. (emphasis added).  Thus,

Defendant Cristello's signing of Incoming Withholding Orders cannot give rise to a Sixth Amendment violation.

In Count 10, Van Etten alleges that Cristello denied him his Seventh Amendment right to a trial by jury. The Seventh Amendment jury right applies in federal courts. U.S. Const. amend. VII; see also Francisco of Family Santos v. Essex County, 2019 WL 3557703, at *3 (D. Mass. Aug. 5, 2019) (citing Gasperini v. Ctr. For Humanities, Inc., 518 U.S. 415, 418 (1996)). Here, on the other hand, Van Etten claims a denial of a Seventh Amendment right to a jury trial in the Probate and Family Court of the state court system. The Seventh Amendment is not applicable. Further, "[i]ndisputably, no constitutional right to a jury trial attaches in the Probate and Family Court." Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 566 n. 20 (2004).

Van Etten brings Count 6 under "Rule 33," claiming that Denham failed to respond to the interrogatories he propounded. [Dkt. No. 1, at p. 13-14]. Mass. R. Civ. P. 33 addresses the process for conducting discovery through interrogatories. Mass. R. Civ. P. 33. Van Etten fails to show the federal court has subject matter jurisdiction to hear a state court discovery dispute.[11] Further, the procedure for challenging a discovery violation under the Massachusetts civil rules is to move for an order compelling an answer. Mass. R. Civ. P. 37(a)(2) (providing procedure

---

[11] At the risk of belaboring this point, federal courts of the United States possess limited subject matter jurisdiction, "meaning that they possess 'only that power authorized by Constitution and statute.'" Boniface v. Viliena, 145 F.4th 98, 109 (1st Cir. 2025) (quoting Gunn v. Minton, 568 U.S. 251, 256 (2013)). "Congress has broadly authorized the federal courts to exercise subject-matter jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" Arbaugh, 546 U.S. at 505; see also U.S. Const. art. III, §2. The jurisdiction granted by 28 U.S.C. § 1331 is often referred to as "federal-question jurisdiction." Arbaugh, 546 U.S. at 505. "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." Calderon-Serra v. Wilmington Trust Co., 715 F.3d 14, 17 (1st Cir. 2013) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). To invoke federal question jurisdiction, the Plaintiff must state the federal question on the face of his well-pleaded complaint. R.I. Fishermen's All., Inc. v. R.I. Dept. of Env't Mgmt., 585 F.3d 42, 48 (1st Cir. 2009). Local rules of discovery used in state courts are not "laws of the United States." Mass. R. Civ. P. 26 (Massachusetts state discovery rules). Because Van Etten fails to show how his claims against Defendants implicate any federal question, this Court cannot adjudicate Count 6 for want of subject matter jurisdiction over the claim. See R.I. Fishermen's All., 585 F.3d at 48.

for compelling discovery when opposing party fails to respond to interrogatories propounded under Mass. R. Civ. P. 33). Even accepting Van Etten's allegations as true, Count 6 fails to state a claim upon which relief can be granted in federal court.

Last in this line, Van Etten brings Count 7 against Denham citing 15 U.S.C. § 1692g. [Dkt. No. 1, at p. 14]. Title 15 of the United States Code regulates commerce and trade, and 15 U.S.C. § 1692g imposes obligations on "debt collector[s]" in connection with a "debt" under the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692g. Van Etten is correct that failure to comply with these obligations can lead to civil liability. See 15 U.S.C. § 1692k (creating private right of action). However, 15 U.S.C. § 1692a provides definitions for both the term "debt" and "debt collector" showing that the FDCPA is not applicable. 15 U.S.C. § 1692a. Section 1692a expressly states that "the obligation to pay child support is not a 'debt' under the [FDCPA]." 15 U.S.C. § 1692a(4) (defining "debt" as "any obligation or alleged obligation of a *consumer* to pay money arising out of a *transaction*…") (emphasis added); see also Raffaele v. Marrama, 164 F.Supp.2d 224, 227 (D. Mass. 2001). Additionally, § 1692a's definition of "debt collector" expressly excludes "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties[.]" 15 U.S.C. § 1692a(6)(C). Accordingly, Counts 2, 6, 7, and 10 all must be dismissed for failure to state a claim upon which relief can be granted.

Van Etten's § 1983 claim in Count 1 against Cristello for allegedly violating his Fourteenth Amendment Due Process rights fails to allege facts that could plausibly support such a claim. A § 1983 claim has two elements: "the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." Gagliardi, 515 F.3d at 306. "The second element requires the plaintiff to

24

show 'that the [defendant's] conduct was the cause in fact of the alleged deprivation.'" Id. "Because vicarious liability is inapplicable to [] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. For a substantive due process claim to be actionable it "must allege executive action that objectively 'shocks the conscience.'" South Commons Condominium Ass'n v. Charlie Arment Trucking, Inc., 775 F.3d 82, 91 (1st Cir. 2014). The alleged actions must be more than "legal error" or "bad faith." Id. at 91-92 (internal citations omitted).

Van Etten's Count 1 alleges that Cristello (1) failed to respond to a "notice" he sent her in July of 2024, [Dkt. No. 1, ¶ 35], and (2) "sign[ed] Income Withholding Order's multiple times without due process of law and without signature of a Judge and Seal of the Court," id. ¶ 44. Given that the standard for a § 1983 claim is that the conduct must "shock[] the conscience," Van Etten's assertions that Defendant Cristello failed to respond to him and signed Income Withholding Orders "without due process of law" without any indication of how Cristello's actions lacked due process are insufficient. South Commons Condominium Ass'n, 775 F.3d at 91-92.

In a similar case decided by the District of New Hampshire, the plaintiff brought claims under § 1983, alleging that her due process rights were violated in part because defendants allegedly failed to provide her with a notice and hearing before attempting to enforce an allegedly illegal child-support order. Tringali v. Assuto, No. 14-cv-124, 2014 WL 1653274 (D.N.H. Apr. 24, 2014), aff'd No. 14-1775 (1st Cir. Apr. 9, 2015). Like Van Etten's claims in Count 1, Tringali's claims were also brought against defendants who were involved only in the post-hearing enforcement process. Id. at *1. Also like Van Etten, Tringali alleged that various

defendants failed to return her phone calls and respond to letters and notices.  Id. at *2-3.  The District of New Hampshire dismissed Tringali's claims, stating that "[a]llegations that employees of a state agency failed to return plaintiff's phone calls, respond to a letter from plaintiff, or refused to meet with plaintiff face-to-face do not rise to the level of a cognizable federal or state claim and are frivolous."  Id. at *5.

Further, the Tringali court also dismissed plaintiff's procedural due process claims on the grounds that they were not actionable because claims that a defendant intentionally deprived plaintiff of a procedural due-process right are "not actionable under § 1983 where the state provides an adequate post-deprivation remedy[,]" id. at *4 (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984)), and state law provided an avenue for seeking administrative and judicial review of child support orders.  Id. (citing M.G.L. ch. 119A, §16(c)).  The Tringali decision is consistent with controlling precedent that "[plaintiffs] cannot complain of a violation of procedural due process rights when [they] have made no attempt to avail themselves of existing state procedures.  "It is well-settled that a 'claim of lack of available due process fail[s] *on the merits* [where] there [is] a process available under state law.'"  Boston Env't Sanitation Inspectors Ass'n v. City of Boston, 794 F.2d 12, 13 (1st Cir. 1986) (quoting Limerick v. Greenwald, 749 F.2d 97, 99 (1st Cir. 1984)).  Because Van Etten's claims do not differ in substance from Tringali's and a process for review of child support orders, which Van Etten chose to forego, exists under Massachusetts law, Van Etten's claims can fare no better than those dismissed by the District of New Hampshire.  I recommend dismissal of Count 1.

Accordingly, insofar as individual liability allegations against Cristello and Denham survive Rooker-Feldman, they fail to state a claim upon which relief can be granted.

IV.    <u>STANDARD FOR FILING AN AMENDED COMPLAINT</u>

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleadings beyond 21 days after service of the original pleading only with leave of the court or on consent, and "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, grant or denial of leave to file an amended complaint is within the court's discretion.  <u>Lukas v. United States</u>, 133 F.Supp.3d 284, 286 (D. Mass. 2015) (citing <u>Forman v. Davis</u>, 371 U.S. 178, 182 (1962)).  Among the reasons that a court may refuse to grant leave is the "futility of amendment."  <u>Forman</u>, 371 U.S. at 182.  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  <u>Glassman v. Computervision Corp.</u>, 90 F.3d 617, 623 (1st Cir. 1996).  "In reviewing for "futility," the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion."  <u>Id.</u>

Here, I deny leave to file an amended complaint on both procedural and substantive grounds. The Court's August 26, 2025, order provided that Van Etten may move for leave to file an amended complaint.  [Dkt. No. 116, n. 1] (order tracking Fed. R. Civ. P. 15 that Van Etten is "permitted to file a motion to amend the complaint consistent with Federal Rule of Civil Procedure 15(a)(2) to which he must attach the proposed amended complaint.").  As provided by Rule 15, in doing so Van Etten was required to obtain the consent of Defendants or the Court's leave.  Van Etten did neither.  Instead, on September 5, 2025, he unilaterally e-filed an Amended Complaint without Defendants' consent or the Court's leave.  [Dkt. No. 120].  For this reason alone, the Amended Complaint should be disallowed.  Further, when, as here, a party's amended complaint adds new defendants, <u>id.</u> (proposing addition of Amy M. Clayman, Joshua R. Fishbein, and John Does 1-10), Local Rule 15.1 prescribes a process a plaintiff must follow.  <u>See</u> Loc. R. 15.1.  Among other things, a plaintiff must serve the motion to amend on the proposed new party 14 days in advance of filing the motion to amend and stating the date on which the

motion to amend will be filed; and the Rule requires a plaintiff to file a certificate stating that the foregoing service has been effected.  Id.  Here, too, Van Etten ignored Local Rule 15.1.  I recommend disallowance of the Amended Complaint.

Substantively, Van Etten's proposed Amended Complaint is futile; it does not cure the fundamental jurisdictional defect of using the federal district court as an appellate forum.  [Dkt. No. 120].  Hence, the Rooker-Feldman (or Younger abstention) doctrine would bar an exercise of federal jurisdiction over the Amended Complaint, as it does over the operative Complaint. Accordingly, I recommend that Van Etten's proposed Amended Complaint be disallowed as this Court is without jurisdiction to hear it.

V.    CONCLUSION

For the reasons stated above, I RECOMMEND that Defendants' Motion to Dismiss the Complaint in its Entirety, [Dkt. No. 91], be GRANTED,[12] and Van Etten's Amended Complaint, [Dkt. No. 120], is DISALLOWED.


/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[12] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia–Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378–79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604–05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140, 154–55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.